**METROPOLITAN DETROIT BRICK-LAYERS DISTRICT COUNCIL, International Union of Bricklayers and Allied Craftsmen, AFL–CIO, a voluntary unincorporated labor organization; and, Bricklayers Fringe Benefit Fund-Metropolitan Area, a trust fund established under and administered pursuant to the laws of the United States, Plaintiff,**

**v.**

**J. E. HOETGER & COMPANY, and Hawkins Masonry, Inc., Defendants.**

No. 79–72067.

United States District Court,
E. D. Michigan, S. D.

Dec. 5, 1979.

Ann E. Neydon, Marston, Sachs, Nunn, Kates, Kadushin & O'Hare, Detroit, Mich., for plaintiff.

Donald J. Gasiorek, Schlussel, Lifton, Simon, Rands, Kaufman, Lesinski & Jackier, Southfield, Mich., for defendant J. E. Hoetger & Co.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This case is before the court on cross motions for summary judgment made by plaintiffs Metropolitan Detroit Bricklayers District Council, International Union of Bricklayers and Allied Craftsmen, AFL–CIO, and the Bricklayers Fringe Benefit Fund, and by defendant J. E. Hoetger & Company. For the reasons given below, defendant's motion is denied in part and granted in part, and plaintiffs' motion is granted in part and denied in part.

The facts in this case are undisputed, and are recited at length in *Bricklayers, Masons and Plasterers' Union Local 29, et al., (J. E. Hoetger & Co.)*, 221 N.L.R.B. 1337 (1976). In 1974 Hoetger entered into a contract with the city of Pontiac to act as general contractor for the construction of a community center. Masonry work for the center was subcontracted to Hawkins Masonry, Inc. Under the contract between Hoetger and Hawkins, Hawkins agreed to employ

only workers affiliated with the Building Trades Unions under the jurisdiction of the American Federation of Labor. The contract further provided that Hawkins assumed exclusive liability for paying all union benefits, although Hoetger reserved "the right to escrow any funds available to insure that these payments are made and deduct same from this contract."

Pursuant to the terms of this contract, Hawkins employed bricklayers belonging to plaintiff union. The employment relationship between Hawkins and the workers was governed by a collective bargaining agreement which provided, *inter alia,* for the payment of fringe benefits by Hawkins. Hoetger was not a party to this collective bargaining agreement.

In February of 1975, after Hawkins had completed approximately 80% of its work on the center, the union struck Hawkins for its failure to pay the fringe benefits required by the collective bargaining agreement. Shortly thereafter, Hoetger cancelled its contract with Hawkins, and Hawkins went out of business. At this point, Hawkins had been paid $64,800 of its $91,000 contract, and Hoetger held $7200 retainage against Hawkins. Hoetger used this retainage money to complete the masonry work on the jobsite through subcontracts with other firms.

The union, in response to information that there were bricklayers on the jobsite although the fringe benefits still hadn't been paid, informed Hoetger that it viewed Hoetger, as general contractor, responsible for those benefits. On May 1, 1975, four pickets appeared on the site carrying signs reading "Bricklayers on strike against Hawkins Masonry for nonpayment of fringes to bricklayers." Other workers on the site honored the picket line, and no work was done for the three days the picketing continued.

In response to the picketing, Hoetger filed an unfair labor practice charge against the union under sections 8(b)(4)(i) and (ii)(B) of the National Labor Relations Act, 29 U.S.C. § 158(b)(4)(i) and (ii)(B). The NLRB adopted the recommended order of

the Administrative Law Judge that the union had not violated the Act as alleged.

Judge Stevenson distinguished the picketing conducted by the union from the usual case in which picketing a secondary general contractor is prohibited. Although finding that Hawkins' independent contractor status vis-a-vis Hoetger was not compromised by any kind of common ownership, management, or supervision, Judge Stevenson concluded that the independent contractor status was compromised by certain of the subcontract terms between Hoetger and Hawkins. Judge Stevenson emphasized that the contract required Hawkins to employ workers affiliated with certain unions, and that

the practical effect was that Hoetger inserted itself into the labor relations of Hawkins in a very basic area by determining that Hawkins' employee complement must consist of members of certain unions only, and that members of other unions and nonunion employees must not be employed by Hawkins. 221 N.L.R.B. at 1339.

Judge Stevenson concluded that Hoetger and Hawkins were thus joint employers under the rule of *Local 363, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (Roslyn Americana Corp.),* 214 N.L.R.B. No. 129 (1974). Under *Roslyn,* a general contractor who exercises a sufficient degree of control over the assignment of work in issue cannot be considered a neutral in a dispute between the union and one of its subcontractors for purposes of § 8(b)(4)(B).

Judge Stevenson buttressed her conclusion that Hoetger and Hawkins were joint employers, noting:

Nor was Hoetger powerless to resolve the dispute in this case over Hawkins' default on the payment of fringe benefits . . . Indeed, Hoetger had also contractually inserted itself into Hawkins' labor relations in this very matter. Thus, in the subcontract Hoetger had reserved to itself the right to escrow any funds available to insure that fringe benefits were paid and to deduct such payments from the contract. Moreover, it seems possible

that Hoetger had in escrow and undispursed on its contract with Hawkins funds from which it could have paid fringes as it had reserved the right to do. If Hoetger had opted to exercise its prerogative in this matter, the dispute might have been resolved. 221 N.L.R.B. at 1339.

Thus, the union was held not to have engaged in secondary picketing and thus had not committed an unfair labor practice.

In June of 1979, plaintiffs commenced the instant suit against Hoetger and Hawkins, "an employer within the meaning of the National Labor Relations Act." The suit was brought under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, for the employer's violation of the collective bargaining agreement which required payment of fringe benefits. Plaintiffs' complaint alleges that Hoetger and Hawkins comprise a single employer which is bound to pay the fringe benefits required by the collective bargaining agreement entered into between the union and Hawkins.

As noted above, Hawkins went out of business in 1975, and has not answered or otherwise defended in this action. On October 24, 1979, the clerk of the court made an entry of default against Hawkins. Hoetger and the plaintiffs filed cross motions for summary judgment and supporting briefs.

The issue presented by these motions is whether Hoetger can be held legally liable for the unpaid fringe benefits due to the relationship it had with Hawkins and despite the fact that it was not a signatory to the collective bargaining agreement which required payment of the fringe benefits. In support of the contention that Hoetger can be found liable for the fringes, plaintiffs maintain that the factual finding of the Administrative Law Judge and the National Labor Relations Board that Hoetger and Hawkins were joint employers should be given collateral estoppel effect in this suit. Plaintiffs assume that if this court considers the joint employer finding binding, that Hoetger will necessarily be legally obligated to pay the fringe benefits due.

Defendant argues first that this case is not a proper one in which to give res judicata or collateral estoppel effect to the findings of fact made in the earlier case. Defendant strenuously argues that there is no basis on which to find it liable for the fringe benefits, or, in fact, to find that this court has jurisdiction to hear this case. Defendant argues that because it was not a party to the collective bargaining agreement sued on, plaintiffs cannot invoke the jurisdiction conferred by 29 U.S.C. § 185, providing for federal district court jurisdiction of suits for violations of collective bargaining agreements between employers and unions. Defendant further maintains that plaintiff's claim is barred by the Statute of Frauds.

Although the parties in this case have been most thorough in briefing the issue presented by these cross motions, neither side has been able to refer this court to any cases directly on point. Plaintiffs have cited a number of cases in which NLRB findings were given binding effect in later suits, but none of the cases cited extends so far as to provide precedent for the imposition of liability on Hoetger. Likewise, defendant cites cases in which findings of the NLRB were not considered binding in subsequent suits where the issue presented differed significantly from the issues presented in the earlier proceedings. *Tipler v. E. I. duPont deNemours & Co.*, 443 F.2d 125 (6th Cir. 1971); *Thomas v. Ford Motor Co.*, 396 F.Supp. 52 (E.D.Mich.1973). Other cases cited by plaintiffs include ones in which NLRB joint employer standards were utilized by courts in order to consolidate workers employed by joint employers for the purpose of finding the employers subject to Title VII of the Civil Rights Act, and cases in which joint employer standards were utilized in order to define appropriate bargaining units. E. g., *Williams v. New Orleans S.S. Assoc.*, 341 F.Supp. 613 (D.La.1972); *Baker v. Stuart Broadcasting Co.*, 560 F.2d 389 (8th Cir. 1977); *NLRB v. Checker Cab Co.*, 367 F.2d 692 (6th Cir. 1966), *cert. den.* 385 U.S. 1008, 87 S.Ct. 715, 17 L.Ed.2d 546 (1967); *S.S. Kresge Co. v. NLRB*, 416 F.2d 1225 (6th Cir. 1969); *Darlington Mfg. Co. v.*

*NLRB,* 397 F.2d 760 (4th Cir. 1968), *cert. den.* 393 U.S. 1023, 89 S.Ct. 632, 21 L.Ed.2d 567 (1969).

■ These cases, as defendant appropriately points out, do not provide this court with precedential authority for the legal conclusion which plaintiffs request this court to make. Nonetheless, the cases cited are instructive on a basic general principle which this court believes should be controlling under the specific facts presented by these motions. The cases cited by plaintiffs teach us that in certain circumstances, it is appropriate and equitable to ignore the separate, fictional identities enjoyed by corporations and other business entities. The court believes that this case presents an appropriate setting in which to apply this principle.

Paramount among the concerns in a situation such as that presented by this case is that the hard working employees receive the benefit of the fringe contributions to which they are entitled. Standing alone, however, the mere fact that contributions are not paid by the contracting employer provides insufficient basis to impose liability on a noncontracting employer. On the other hand, this case presents a significantly different situation, in that Hoetger inserted itself into the very aspects of Hawkins' relationship with its employees involved in this suit. First, it required that only members of certain unions be employed by Hawkins. Second, it reserved the right to escrow available funds for payment of the contractually required fringe benefits. Finally, it used the Hawkins retainage money to complete the masonry work on the center rather than to reduce the amounts due for fringe benefits, although it knew that Hawkins had defaulted on its obligations.

The above facts demonstrate that Hoetger and Hawkins had a substantial relationship that superseded their independent contractor status. By the terms of their subcontract, Hoetger and Hawkins agreed on the identity of the masonry laborers on the construction project, and also on material terms regarding payment of fringe benefits due to those laborers. This agreement evidences the close relationship between Hoetger and Hawkins as regards these aspects of employment, a relationship substantially similar to that shared by the "joint employers" in the earlier cited cases. See e. g., *Roslyn Americana Corp., supra,* and the cases cited on page 299 of this opinion.

■ Because of the close relationship between Hoetger and Hawkins, it is only fair and equitable to hold Hoetger liable for the fringe benefits which Hawkins obligated itself to pay under the terms of the collective bargaining agreement. Where a general contractor substantially and integrally inserts itself into the material terms of the employment obligations owed by the subcontractor to its employees, justice requires that the general contractor be bound to honor the subcontractor's obligations to those employees, and that the separate identities of these corporations be ignored for this limited purpose. This conclusion is supported and buttressed by the finding of the NLRB that Hoetger and Hawkins were joint employers in the adjudication of the unfair labor practice charge, a proceeding which involved issues independent of, but not unrelated to, the issue involved in this suit.

■ The propriety of holding Hoetger liable for fringe benefits when it had integrally and substantially inserted itself into this aspect of the employment relationship cannot, however, be squared with imposing on Hoetger liability for any late penalties or costs of collection. As noted above, this case presents an issue of first impression. In view of the fact that Hoetger was acting reasonably and in good faith in denying liability for the past due fringe benefits, it should not be held liable for any of these charges.

Plaintiffs' complaint sets forth the allegation that the defendant's unpaid indebtedness plus late charges total $11,392.08. An affidavit in support of plaintiffs' motion attests to the correctness of this figure, but does not provide information as to what part of that figure comprises late charges.

The record does not reflect, therefore, the sum in which judgment should be entered for plaintiffs. The parties are ordered to confer on the question of the amount of late charges. If an agreement can be reached on this factual issue, judgment will be entered in accordance with that agreement. If no agreement can be reached, a hearing shall be set to determine the amount of defendant's liability. The parties are ordered to inform the court by January 7, 1980 as to whether or not a stipulation on this issue will be forthcoming.

In conclusion, summary judgment in favor of plaintiffs is granted as to defendant's liability, as limited in this opinion, for the fringe benefit contributions due under the collective bargaining agreement. Summary judgment in favor of defendant is granted as to its nonliability for any late charges or costs of collection.

So ordered.