672 F.2d 580
 109 L.R.R.M. (BNA) 3073, 94 Lab.Cas. P 13,571
 METROPOLITAN DETROIT BRICKLAYERS DISTRICT COUNCIL,
INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED
CRAFTSMEN, AFL-CIO, and Bricklayers'
Fringe Benefit
Funds-Metropolitan
Area,
Plaintiffs-Appellees,
v.
J. E. HOETGER & COMPANY, Defendant-Appellant.
 No. 80-1321.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 15, 1981.
Decided March 16, 1982.
 
 Donald J. Gasiorik, Schlussel, Lifton, Simon, Rands, Kaufman, Lesinski & Jackier, James C. Foresman, Southfield, Mich., for defendant-appellant.
 Ann E. Neydon, Marston, Sachs, Nunn, Kates, Kadushin & O'Hare, Rolland R. O'Hare, Detroit, Mich., for plaintiffs-appellees.
 Before KEITH, BROWN and KENNEDY, Circuit Judges.
 BAILEY BROWN, Circuit Judge.
 
 
 1
 The question presented by this appeal is whether appellant J. E. Hoetger and Company ("Hoetger") is liable under § 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a) (1976), for fringe benefits owed to the appellees, Metropolitan Detroit Bricklayers District Council, International Union of Bricklayers and Allied Craftsmen ("Union") and its Fringe Benefit Funds, pursuant to the Union's collective bargaining agreement with Hawkins Masonry, Inc. ("Hawkins"). The district court held that, although Hoetger was not a party to the collective bargaining agreement between Hawkins and the Union, Hoetger's relationship with Hawkins was such that it was "fair and equitable" to require Hoetger to pay the fringe benefits.[1] We reverse since we determine that the decision of the district court is not supported by the facts or the law.
 
 I.
 
 2
 In 1974, Hoetger entered into a contract with the city of Pontiac, Michigan, to act as general contractor for the construction of a community center. Masonry work for the center was subcontracted to Hawkins. The subcontract between Hoetger and Hawkins required that Hawkins employ only workers affiliated with the appellee Union. The subcontract further provided that Hawkins assumed exclusive liability for paying all Union benefits, although Hoetger reserved "the right to escrow any funds available to insure that these payments are made and deduct same from this contract."
 
 
 3
 Pursuant to the terms of this contract, Hawkins employed Union members under a collective bargaining agreement between the Union and a multi-employer bargaining unit of which Hawkins was a member, but of which Hoetger was not a member. This agreement provided, inter alia, for the payment of fringe benefits by Hawkins to the Union's fringe benefit fund.
 
 
 4
 In February of 1975, after Hawkins had completed 80% of its work on the center, the Union struck Hawkins for its failure to pay the fringe benefits. At that time, Hawkins ceased its operations at the site, having been paid $64,800 of its $91,000 contract. Hoetger held $7200 retainage against Hawkins, which was used in completing the masonry work through subcontracts with other firms.[2] Hawkins went out of business on March 5, 1975.
 
 
 5
 The Union informed Hoetger that it viewed Hoetger, as general contractor, responsible for the fringe benefits that Hawkins had not paid. On May 1, 1975, four pickets appeared on the site carrying signs reading "Bricklayers on strike against Hawkins Masonry for nonpayment of fringes to bricklayers." Other workers on the site honored the picket lines, and no work was done for three days.
 
 
 6
 In response to the picketing, Hoetger filed an unfair labor practice charge against the Union. After a hearing, the Administrative Law Judge ruled that the Union had not violated § 8(b)(4)(i) and (ii)(B) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(b)(4)(i) and (ii)(B) (1976), as alleged. 221 N.L.R.B. 1337 (1976). The ALJ ruled that the independent contractor status of Hawkins had been compromised by certain of the subcontract terms between Hawkins and Hoetger, such as the requirement that Hawkins employ only Union members. The ALJ therefore concluded that Hoetger and Hawkins were joint employers under the rule of Local 363, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (Roslyn Americana Corp.), 214 N.L.R.B. No. 129 (1974).[3] The N.L.R.B. adopted the ALJ's order. 221 N.L.R.B. 1337 (1976).
 
 
 7
 In June of 1979, the Union brought this action against Hoetger and Hawkins pursuant to § 301(a) of the LMRA, 29 U.S.C. § 185(a), alleging that they had violated the collective bargaining agreement. The Union alleged that Hoetger and Hawkins comprised a single employer which was required to pay the fringe benefits under the collective bargaining agreement.
 
 
 8
 Since Hawkins had been out of business since 1975, it did not answer or otherwise defend in this action. A default judgment against Hawkins was entered on October 24, 1979.
 
 
 9
 On cross-motions for summary judgment, the district court, relying on "a basic general principle," ruled that in certain circumstances, "it is appropriate and equitable to ignore the separate, fictional identities employed by corporations and other business entities." 480 F.Supp. at 300. Since Hoetger had "inserted itself" into the relationship between Hawkins and the Union by requiring Union employment, by retaining the option to escrow funds to insure that fringe benefits were paid, and by using the retainage to finish the project instead of paying the fringe benefits, the court ruled that Hawkins and Hoetger had "a relationship substantially similar to that shared by ... 'joint employers' ...." Id. The district court, however, did not rely on the N.L.R.B.'s determination that Hoetger and Hawkins were "joint employers" but felt that that determination "buttressed" its own conclusion. Id.[4]
 
 
 10
 Judgment was entered against Hoetger in the amount of $6,073.45 on March 16, 1980. This appeal followed.
 
 II.
 
 11
 As a preliminary matter, Hoetger contends that, since it was not a party to the collective bargaining agreement that forms the basis for this suit, the district court lacked jurisdiction to decide the Union's claim against it. Section 301(a) of the LMRA, which confers federal jurisdiction in cases of this type, provides in relevant part:
 
 
 12
 Suits for violations of contracts between an employer and a labor organization representing employees ... may be brought in any district court in the United States.
 
 
 13
 29 U.S.C. § 185(a) (1976).
 
 
 14
 We recognize that courts have generally held that this section creates federal jurisdiction only over parties to the contract being sued upon. Teamsters Local Union No. 30 v. Helms Express, Inc., 591 F.2d 211 (3rd Cir.), cert. denied, 444 U.S. 837, 100 S.Ct. 74, 62 L.Ed.2d 48 (1979); Aacon Contracting Co. v. Ass'n of Catholic Trade Unionists, 178 F.Supp. 129 (E.D.N.Y.1959), aff'd, 276 F.2d 958 (2nd Cir. 1960). However, since the primary issue in this case was whether Hoetger was a "joint employer" such that it could be bound by the collective bargaining agreement, we conclude that the district court had jurisdiction under § 301(a) to decide this claim. Baker v. Fleet Maintenance, Inc., 409 F.2d 551, 553-54 (7th Cir. 1969); see Russom v. Sears, Roebuck and Co., 558 F.2d 439, 443 n.7 (8th Cir.), cert. denied, 434 U.S. 955, 98 S.Ct. 481, 54 L.Ed.2d 313 (1977).
 
 III.
 
 15
 On the merits, Hoetger argues that there is no legal basis for the district court's decision that it was liable for the fringe benefits which Hawkins obligated itself to pay under the terms of the collective bargaining agreement. The Union responds that there are a number of legal theories to support the district court's decision.
 
 
 16
 First, the Union contends that Hoetger and Hawkins were joint employers and that Hoetger was therefore liable under § 301(a) for Hawkins's violation of the collective bargaining agreement. Although the district court did not explicitly find that Hoetger and Hawkins were joint employers, the Union urges this court to make such a finding, either by giving collateral estoppel effect to the prior N.L.R.B. determination or by independently applying the N.L.R.B.'s "joint employer" standards to the facts of this case.[5]
 
 
 17
 It is well settled that collateral estoppel effect can be given to findings of an administrative agency acting in a judicial capacity. United States v. Utah Construction & Mining Co., 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966). This circuit has held, however, that collateral estoppel effect need not be given to such findings when they were made in adjudicating legal issues that are significantly different from the issue before the court. Tipler v. E. I. duPont deNemours and Co., 443 F.2d 125 (6th Cir. 1971). The reason for this rule is that the "purposes, requirements, perspective, and configuration of different statutes ordinarily vary." Id. at 129; accord, Connecticut Light & Power Co. v. Federal Power Commission, 557 F.2d 349, 353 (2nd Cir. 1977) ("The conclusive effect of an administrative determination is limited to the purpose for which it was made.").
 
 
 18
 The N.L.R.B.'s decision that Hoetger and Hawkins were joint employers arose in the context of deciding whether the Union's picketing of Hoetger was an unfair labor practice under § 8(b)(4)(i) and (ii)(B) of the NLRA. The issue before this court, by contrast, is whether Hoetger was the Union's "employer" and therefore liable under the collective bargaining contract pursuant to § 301(a) of the LMRA.
 
 
 19
 An additional reason for denying collateral estoppel effect to the N.L.R.B.'s finding is that § 301(a) gives the federal courts exclusive jurisdiction over cases arising from the breach of collective bargaining agreements. Since the N.L.R.B. has no authority to decide whether Hoetger is liable under the collective bargaining agreement, its finding that Hoetger was a joint employer with Hawkins should not be given preclusive effect in a § 301(a) proceeding. La Mirada Trucking, Inc. v. Teamsters Local 166, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, 538 F.2d 286, 288 (9th Cir. 1976), cert. denied, 429 U.S. 1062, 97 S.Ct. 787, 50 L.Ed.2d 778 (1977); Fibreboard Paper Products Corp. v. East Bay Union of Machinists, Local 1304, 344 F.2d 300 (9th Cir.), cert. denied, 382 U.S. 826, 86 S.Ct. 61, 15 L.Ed.2d 71 (1965); see Lightsey v. Harding, Dahm & Company, Inc., 623 F.2d 1219, 1221-22 (7th Cir. 1980), cert. denied, 449 U.S. 1077, 101 S.Ct. 855, 66 L.Ed.2d 799 (1981) (since Indiana Real Estate Commission did not have statutory authority to decide issue raised in plaintiff's complaint, Commission's decision on the issue did not collaterally estop plaintiff from bringing action in federal court).
 
 
 20
 For these reasons, we conclude that the N.L.R.B.'s determination that Hoetger and Hawkins were joint employers should not be given collateral estoppel effect in this proceeding. It is therefore necessary to undertake an independent review of the facts to determine whether Hoetger and Hawkins were joint employers.
 
 
 21
 There are four factors which must be analyzed in determining whether two companies are joint employers: the interrelation of operations between the companies, common management, centralized control of labor relations, and common ownership. Radio and Television Broadcast Technicians Local Union 1264 v. Broadcast Service of Mobile, Inc., 380 U.S. 255, 256, 85 S.Ct. 876, 877, 13 L.Ed.2d 789 (1965). All four criteria need not be present. Local No. 627, International Union of Operating Engineers v. N. L. R. B., 518 F.2d 1040, 1046 (D.C.Cir.1975), aff'd in part, vacated in part sub nom. South Prairie Construction Co. v. Local No. 627, International Union of Operating Engineers, 425 U.S. 800, 96 S.Ct. 1842, 48 L.Ed.2d 782 (1976). The issue is essentially factual. Boire v. Greyhound Corp., 376 U.S. 473, 481, 84 S.Ct. 894, 898, 11 L.Ed.2d 849 (1964).
 
 
 22
 Applying these criteria to the record in this case, there is no showing that Hoetger and Hawkins integrated their operations on the job site. They were not under common management or control. Their relationship was purely contractual. The only element which would arguably support a finding that the two companies were joint employers is Hoetger's "control" over Hawkins's labor relations through the subcontract provisions requiring Hawkins to hire Union workers and retaining the right to escrow funds to insure that Union benefits were paid.[6]
 
 
 23
 We do not believe that the degree of control Hoetger exercised over Hawkins's labor relations was sufficient to establish a joint employer relationship. There is no showing in the record that Hoetger exercised any day-to-day control over Hawkins's relations with its employees. Although the subcontract between Hoetger and Hawkins required that only Union members be hired, there is no showing that any actual hiring or firing decisions were made by Hoetger. In addition, there is no showing that Hoetger supervised Hawkins's employees in the performance of the work. Indeed, the contract between Hoetger and Hawkins stated that Hawkins was responsible for such supervision.[7]
 
 
 24
 Moreover, the actual terms and conditions of employment were dictated by the pre-existing collective bargaining agreement between the Detroit Mason Contractors Association, of which Hoetger was not a member, and the Union. The subcontract between Hoetger and Hawkins evidences Hoetger's intent not to be bound by the terms of that agreement. It provides that Hawkins assumed exclusive liability for paying "union benefits as determined by or pegged to each employees (sic) base wage by virtue of existing and/or future agreements."
 
 
 25
 Although it is true that Hoetger retained the right to escrow funds to insure that such fringe benefits were paid, there is no showing that Hoetger in fact escrowed funds for that purpose. It is undisputed that Hoetger used the $7200 retainage to complete the masonry work, and it is not contended that the cost of completion did not at least equal the balance to be paid under the contract plus the retainage. Moreover, the problem with relying on this escrow provision in the subcontract between Hoetger and Hawkins to impose joint employer status on Hoetger is that Hoetger's potential liability as a joint employer would extend far beyond the payment of fringe benefits. Hoetger would in effect become a guarantor for all of the amounts owed to Hawkins's employees under the collective bargaining agreement merely because it reserved the right to insure that fringe benefits were paid.[8]
 
 
 26
 The district court concluded, however, that "fairness and equity" required that Hoetger pay the fringe benefits owed to the Union in this case. The Union urges this court to uphold this decision as a proper exercise of the federal courts' power under § 301(a) to fashion federal law "from the policy of our national labor laws." Textile Workers of America v. Lincoln Mills of Alabama, 353 U.S. 448, 456, 77 S.Ct. 912, 917, 1 L.Ed.2d 972 (1957).
 
 
 27
 We conclude, however, that whether the case is approached from the standpoint of "fairness and equity" or from the point of view of deciding whether Hoetger was a joint employer, it would be contrary to sound policy to impose liability on Hoetger simply because it required Hawkins to hire Union employees and reserved the right to escrow funds to insure that fringe benefits were paid to those employees. The result of the district court's decision would be to discourage inclusion of such provisions in subcontracts. We see no policy reason to discourage the use of such provisions, which happen to be pro-union, and no policy reason why principal contractors such as Hoetger should not be able to use such provisions without becoming liable to the union.
 
 
 28
 Accordingly, we hold that the district court erred in imposing liability on Hoetger for Hawkins's unpaid fringe benefits. We believe that, as a factual and legal matter, Hoetger did not become the Union's "employer" through its subcontract with Hawkins, and therefore Hoetger is not liable under § 301(a) for Hawkins's breach of the collective bargaining agreement.
 
 
 29
 The judgment of the district court is REVERSED and the case is remanded for entry of summary judgment in favor of Hoetger.
 
 
 
 [1]
 The district court's opinion is reported at 480 F.Supp. 296 (E.D.Mich.1979)
 
 
 [2]
 The amount that Hoetger had paid to Hawkins ($64,800) plus the retainage ($7200) equals 80% of the contract price of $91,000
 
 
 [3]
 Under Roslyn, a general contractor who exercises a sufficient degree of control over the assignment of work in issue cannot be considered a neutral in a dispute between the Union and one of its subcontractors
 
 
 [4]
 Although the district court in its opinion and the appellees in this court deal with the question of Hoetger's liability to appellees as depending upon whether Hoetger and Hawkins were "joint employers," it seems to us that it would be more precise to view the liability as depending upon whether Hoetger, as a matter of contract, had undertaken Hawkins's liability to appellees under the collective bargaining contract. However, we will deal with the problem as did the district court and appellees here. We point out that the result reached here would be the same even if we analyzed it as a matter of contract law since it is clear that Hoetger did not undertake Hawkins's obligations under the collective bargaining contract
 
 
 [5]
 Even if Hoetger were a joint employer, it may not necessarily follow, in the absence of Hoetger's contractually undertaking liability under the collective bargaining agreement, that it would be liable to appellees for the fringe benefits provided by the agreement. Because we decide that Hoetger and Hawkins were not joint employers, it is not necessary to reach this issue
 
 
 [6]
 The district court appears to have relied on this "control" in finding that Hoetger was liable under the collective bargaining agreement
 (H)oetger inserted itself into the very aspects of Hawkins' relationship with its employees involved in this suit. First, it required that only members of certain unions be employed by Hawkins. Second, it reserved the right to escrow available funds for payment of the contractually required fringe benefits. Finally, it used the Hawkins retainage money to complete the masonry work on the center rather than to reduce the amount due for fringe benefits, although it knew that Hawkins had defaulted on its obligations.... Where a general contractor substantially and integrally inserts itself into the material terms of the employment obligations owed by the subcontractor to its employees, justice requires that the general contractor be bound to honor the subcontractor's obligations to those employees, and that the separate identities of these corporations be ignored for this limited purpose.
 
 
 [480]
 F.Supp. at 300
 
 
 [7]
 In Kaylor v. Crown Zellerbach, 643 F.2d 1362 (9th Cir. 1981), the Ninth Circuit held that no issue of fact was raised that two companies were joint employers where one company had control of employees' wages, benefits and working conditions
 
 
 [8]
 If Hoetger had obligated itself in its contract with Hawkins to escrow amounts due as fringe benefits and had failed to do so, or if it had actually escrowed funds for this purpose, appellees would have had a claim against Hoetger as third party beneficiaries, though not necessarily under § 301(a)