GENERAL DRIVERS, WAREHOUSE-MEN AND HELPERS, LOCAL UNION NO. 89, Affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Plaintiff-Appellant,

v.

PUBLIC SERVICE COMPANY OF INDIANA, INC., Defendant-Appellee.

No. 82–2193.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 17, 1983.

Decided April 13, 1983.

secured creditors will receive one hundred percent of the amount they are owed.

Ralph H. Logan, Louisville, Ky., for plaintiff-appellant.

William E. Roberts, Indianapolis, Ind., for defendant-appellee.

Before PELL and ESCHBACH, Circuit Judges, and VAN PELT,* Senior District Judge.

* Robert Van Pelt, Senior District Judge for the

PELL, Circuit Judge.

Teamsters Local Union No. 89 (Local 89 or Union) appeals from the district court's judgment, following a full hearing, denying the Union's requests for an order requiring Public Service Company of Indiana, Inc. (PSI) to arbitrate certain grievances filed by Local 89 and for an injunction prohibiting PSI and a contractor from making any changes in warehousing operations until after resolution of the grievances. The primary issue on appeal is whether PSI was an "employer" of those persons represented by Local 89.

## I.  FACTS

### A.  Background

The present dispute arises out of the construction, for PSI, of the Marble Hill Nuclear Generating Station in Jefferson County, Indiana (Marble Hill or Project). Cherne Contracting Company (Cherne) has contracted, throughout the period of construction, to perform a variety of jobs at Marble Hill. Cherne employees working on the Project are represented by Local 89. Cherne and Local 89 are parties to a labor-management agreement, 29 U.S.C. § 185, providing for arbitration of the grievances of Cherne employees.

Cherne and PSI had a contractual arrangement whereby Cherne was to operate four PSI-owned warehouses at the construction site. From March, 1981, until February 27, 1982, nine Cherne employees were employed in jobs related to operation of the warehouses.

In February, 1982, PSI notified Cherne that, effective February 27, 1982, Cherne's services with respect to the warehouses were no longer needed. Cherne removed its employees from the warehouses. These nine employees subsequently filed grievances against both Cherne and PSI.

### B.  Marble Hill Project Agreement

A multi-party Project Agreement was executed in 1977 by all the parties then in-

District of Nebraska, sitting by designation.

volved in the Marble Hill construction. Other parties, including ·Cherne, which began work at Marble Hill after the Project Agreement was signed, have signed letters assenting to be bound by it.

The first paragraph of the Project Agreement denominates the parties. PSI is shown as the "Owner." The "Employer" is stated to be "the various contractors and subcontractors performing work on the Project." Local 89 is included as one of the Unions involved in the Project.

The Project Agreement provides that the Owner retains the right to terminate or suspend construction on all or various phases of Marble Hill. Art. I–3. Article III reserves to the Employer daily control of all operations and labor relations functions. Article VIII provides that wages and benefits are governed by contracts between the Employers and the Unions.

Articles V and VI of the Project Agreement concern labor-management relations· at Marble Hill. Article V provides that the Unions and employees "agree to process disputes with the Employer in accordance with the grievance provisions set forth in the Agreement." Article VI outlines the specific steps of the grievance and arbitration procedure. The roles of the Employer, employee and Union at each step of the procedure are detailed. The Owner is not mentioned in either Article V or Article VI.

Article IX of the Project Agreement sets the regular hours of work on the project as well as the pay rate for what the Agreement defines as overtime work. Article XIII details work rules for the Project, including Rule 16 which states: "All employees will recognize and be bound by the Owner's Station Rules."

C. *Prior Proceedings*

On March 4, 1982, Local 89 filed suit against PSI and Cherne in the district court, pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. The Union sought a court order requiring both defendants to arbitrate the grievances ·filed on behalf of the nine Cherne employees who had been employed in the warehousing operation at Marble Hill. Local 89 also sought an injunction to maintain the status quo regarding the warehousing operation, as it existed prior to February 27, 1982, until the grievances had been resolved. PSI's answer denied any duty to arbitrate. PSI also challenged, in a motion to dismiss, the subject matter jurisdiction of the court on the ground that it was not an employer within the meaning of 29 U.S.C. § 185.[1]

The matter was advanced on the district court's calendar, *see* Fed.R.Civ.P. 65, 78, and a hearing on the injunction sought by the Union was consolidated with a trial on the merits. Cherne defaulted. On March 11, 1982, the district court entered judgment that Cherne was under a duty to arbitrate the dispute but that PSI had no such duty. The district court subsequently denied Local 89's motion for a new trial. This appeal, as to which Cherne is not a party, followed.

## II.  DISCUSSION

Because denial of the injunction sought by Local 89 was proper if PSI had no duty to arbitrate, we focus primarily on whether PSI had such a duty either directly under the Project Agreement or because it was a joint employer, along with Cherne, of the aggrieved Local 89 employees. The Union's argument that PSI had a duty to arbitrate turns primarily on the degree of immediate control exercised by PSI over the daily operations at Marble Hill. Before turning to the question of PSI's control over the Project, we address the other points raised by Local 89.

A. *General Rules Pertinent to Suit to Compel Arbitration*

As the Union asserts, arbitrability is generally a question to be decided by the

---

1. 29 U.S.C. § 185 provides that a district court has subject matter jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce."

arbitrator, following the presumption in favor of arbitrability. *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). The Supreme Court has also recognized, however, that "[n]o obligation to arbitrate a labor dispute arises solely by operation of law. The law compels a party to submit his grievance to arbitration only if he has contracted to do so." *Gateway Coal Co. v. United Mine Workers of America,* 414 U.S. 368, 374, 94 S.Ct. 629, 635, 38 L.Ed.2d 583 (1974). The question whether or not a party has agreed to arbitrate disputes in which it is involved falls within this rule and must be resolved by reference to the applicable contract. *Oil, Chemical & Atomic Workers International Union, AFL–CIO v. American Maize Products Co.,* 492 F.2d 409, 411 (7th Cir.1974) (citing *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 1581 (1962)), *cert. denied,* 417 U.S. 969, 94 S.Ct. 3173, 41 L.Ed.2d 1140.

Because the issue in this case is whether PSI had contracted to arbitrate disputes, the presumption in favor of arbitrability is inapplicable unless this threshold question is decided in favor of Local 89. We turn therefore to whether PSI contracted to arbitrate grievances.

## B. Contractual Duty to Arbitrate

■ PSI was not a party to the collective bargaining agreement between Cherne and Local 89. Any duty of PSI to arbitrate would therefore have to arise from the Project Agreement.

Article V of the Project Agreement refers to the duty of the "Unions and the employees, individually ... to process disputes with the Employer in accordance with the grievance provisions set forth [in Article VI]." There is no reference whatsoever to the "Owner," the designation attributed to PSI in the first paragraph of the Project Agreement.

Article VI (Grievance and Arbitration Procedure) outlines in detail the procedural requirements pertaining to submission and arbitration of grievances. Specific references are made to the "Employer," the aggrieved employee, and the "appropriate craft business representative." The term "Owner" does not appear anywhere in the detailed procedures.

The language of the Project Agreement compels the conclusion that the "Owner" has no obligation to arbitrate grievances. Unless PSI can be characterized as an "Employer" as well as the "Owner" pursuant to the Project Agreement, PSI had no duty to arbitrate the grievances filed by Local 89 on behalf of the Cherne employees.

## C. Joint Employer

Local 89 argues that PSI exercised a significant degree of control over the daily operations at Marble Hill, that much of this control directly affected employees, and that PSI must therefore be considered a joint employer, along with Cherne, of the aggrieved Cherne employees. Presumably, the Union reasons that if PSI was a joint employer as a matter of law, see 29 U.S.C. § 152(2) (defining term "employer"), obligations attributable to the "Employer" under the Project Agreement, including the duty to arbitrate, are obligations of PSI.

The criteria for judging whether a joint employer relationship exists, for purposes of 29 U.S.C. § 152(2), were summarized by the Supreme Court in *Radio & Television Broadcast Technicians Local Union 1264 v. Broadcast Service of Mobile, Inc.,* 380 U.S. 255, 256, 85 S.Ct. 876, 877, 13 L.Ed.2d 789 (1965). The controlling criteria are: interrelation of operations, common management, centralized control of labor relations, and common ownership.

This court has held that the determination whether two parties "functioned as joint employers is essentially factual." *Davis v. NLRB,* 617 F.2d 1264, 1271 (7th Cir. 1980). The judge below specifically found that the nine aggrieved Cherne employees

were not employees of PSI and that Cherne was an independent contractor with respect to PSI. Both these findings refute Local 89's contention that PSI and Cherne were joint employers. In applying the *Broadcast Service* criteria to the instant case, we must uphold the findings of the district court unless they are clearly erroneous. Fed.R. Civ.P. 52(a).

Courts have implied that the most significant of the *Broadcast Service* criteria is the existence of any joint control over labor relations. For instance, in *Russom v. Sears, Roebuck & Co.,* 558 F.2d 439 (8th Cir.1977), *cert. denied,* 434 U.S. 955, 98 S.Ct. 481, 54 L.Ed.2d 313, the Eighth Circuit found a "close and to some extent interconnected" relationship between Sears and DAS. *Id.* at 443. After applying the other *Broadcast Service* criteria, the court stated: "Most significantly, the record reflects that Sears did not participate in any labor negotiations which preceded formation of such a contract." *Id.* The Eighth Circuit upheld the trial court's finding that Sears and DAS were not joint employers. *See also Metropolitan Detroit Bricklayers District Council v. J.E. Hoetger & Co.,* 672 F.2d 580 (6th Cir.1982) (noting that general contractor neither participated in negotiations for nor was signatory to locally negotiated labor agreement between subcontractor and its employees).

In the present case, PSI is not a signatory to the collective bargaining agreement between Cherne and Local 89; further, PSI did not participate in any negotiations preceding such an agreement. The Project Agreement reserves to the Employer control over all labor relations functions. Art. III. Hiring, firing, promotion, wages, benefits, and related aspects of the employment relationship are matters between Cherne and its employees. PSI's only role in such issues is the indirect power it has to affect employees by suspending or terminating operations at Marble Hill. Art. I–3. Such an indirect role, absent any participation by PSI in collective bargaining negotiations, is not strong evidence of a "centralized control of labor relations," *Broadcast Service,* 380 U.S. at 256, 85 S.Ct. at 877.

Turning to the other criteria enunciated in *Broadcast Service,* we note first that there is no common ownership between PSI and Cherne. Further, there is no common management, in the sense of interlocking directors or officers. The *only* evidence of what Local 89 characterizes as a joint employer relationship is, therefore, the right of PSI to terminate or suspend work on the Project, Art. I–3, the specification of work hours for the Project, Art. IX, and of work rules for the Project, Art. XIII. These factors do not evidence a "joint" relationship between PSI and Cherne; rather, they suggest only that PSI believed a certain uniformity of hours and rules and the maintenance of some power in the Owner were essential to the success of the Project.

The maintenance of some power by a party other than the "employer" does not convert the relationship to one of joint employers. For instance, in *Metropolitan Detroit Bricklayers District Council v. J.E. Hoetger & Co.,* 672 F.2d 580 (6th Cir.1982), the issue was whether a general contractor was a joint employer with a subcontractor. The general contractor insisted that the subcontractor hire only union workers. The general contractor also had the right to retain funds in escrow to ensure that union benefits were paid. The Sixth Circuit found that no joint employer relationship existed, relying on the fact that the general contractor did not control the subcontractor's labor relations and did not make any decisions regarding the hiring, firing, or supervising of the subcontractor's employees.

The indirect control PSI retained over employees of Cherne and of other contractors by virtue of its right to suspend or terminate portions of the Project is insufficient evidence to support the conclusion that PSI and Cherne were joint employers under the criteria articulated in *Broadcast Service.* PSI's establishment of uniform working hours and work rules for the Project does not alter this result. The conclusions of the district judge that the nine aggrieved Cherne employees were not employees of PSI and that Cherne was an

independent contractor as to PSI are supported by the record. They are in no sense "clearly erroneous."

## CONCLUSION

PSI has no obligation to arbitrate grievances with Local 89. PSI is not a signatory to the collective bargaining agreement between Cherne and Local 89. The Project Agreement requires that "Employers" on the Project submit disputes to arbitration. There is no similar requirement pertaining to the "Owner." Further, the degree of control PSI exercises over the daily operations at Marble Hill does not support the conclusion that PSI is a joint employer of the aggrieved Cherne employees.

Because PSI has no obligation to arbitrate the dispute, the district judge correctly denied Local 89's request for a status quo injunction.

The judgment of the court below is therefore

AFFIRMED.