COMPUTER SCIENCES CORPORATION, as successor to Federal Electric Corporation, Petitioner-Cross Respondent,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent-Cross Petitioner.

No. 76–1966.

United States Court of Appeals, Eleventh Circuit.

June 4, 1982.

---

Stanley E. Craven, Kansas City, Mo., J. Nicholas Counter, III, Los Angeles, Cal., for petitioner-cross-respondent.

Elliott Moore, Deputy Assoc. Gen. Counsel, Bernard Jeweler, N. L. R. B., Washington, D. C., for respondent-cross-petitioner.

Before MORGAN, HILL and KRAVITCH, Circuit Judges.

HILL, Circuit Judge:

This case is before us on a petition by the National Labor Relations Board (NLRB or the Board) for an adjudication that respondent Computer Sciences Corporation (CSC) is in civil contempt of a prior judgment of the former Fifth Circuit granting enforcement of a Board order. That order was issued against CSC's competitor, Federal Electric Corporation (FEC). The current dispute between the Board and CSC centers on whether CSC may properly be bound by the prior judgment since it was neither a party to the unfair labor practice proceeding which gave rise to the Board order nor to the subsequent enforcement proceedings before the Fifth Circuit.

I

FEC provided space shuttle computer support services under a contract with the National Aeronautics and Space Administration (NASA) at Kennedy Space Center. In 1975 the International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators (IATSE) won a representation election conducted among FEC employees. On September 29, 1976, a panel of the former Fifth Circuit enforced a Board order which overruled objections made by FEC to the conduct of the election and which found FEC guilty of an unfair labor practice in its refusal to bargain. *Federal Electric Corp. v. NLRB*, 539 F.2d 1043 (5th Cir. 1976). The Board's order, as enforced by the court, directed FEC's "officers, agents, *successors*, and assigns" to commence good faith bargaining with the union certified to represent employees in the Commercial Programming Section of FEC's Computations Department. *Federal Electric Corp.*, 223 N.L.R.B. 161 (1976).

Following the court's decision, CSC successfully underbid FEC for a contract to provide NASA with shuttle support services. FEC's contract expired on September 30, 1977. On October 1, 1977, CSC, having employed many former FEC commercial programmers, began performing support services. Because FEC and the union had not completed negotiations on a collective bargaining agreement before CSC's takeover, the union requested that CSC bargain with the union. Based on its belief that the union no longer represented a majority of the commercial programmers it employed, CSC refused, and the union filed an unfair labor practice charge with the Board.

Rather than proceeding to adjudicate this charge, the Board instead instituted this civil contempt action against CSC as successor to FEC. Upon CSC's motion to dismiss the contempt petition,[1] a panel of the former Fifth Circuit ordered CSC to file an answer to the petition and referred the cause to an administrative law judge as special master for an evidentiary hearing.

---

1. The court has not ruled on this motion; it has therefore been carried with the case.

The special master's report found that CSC is a successor to FEC within the scope of the court's prior enforcement decree and recommended that CSC be adjudged in contempt. The purgation order suggested by the special master proposed that CSC fully comply with the decree, set an initial meeting date for bargaining, publicize the contempt adjudication to its bargaining unit employees, file periodic reports with the clerk of this court showing steps toward compliance, and pay the Board's costs, including attorney's fees.

## II

CSC raises several arguments against an adjudication of contempt. First, citing *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 65 S.Ct. 478, 89 L.Ed. 661 (1945), it contends that Federal Rule of Civil Procedure 65(d) [2] precludes contempt sanctions because there is no privity between itself and FEC. CSC also objects that this court is without authority, prior to a Board hearing on the question, to determine whether it is a successor to FEC. Relying on *South Prairie Construction Co. v. Local No. 627, International Union of Operating Engineers*, 425 U.S. 800, 96 S.Ct. 1842, 48 L.Ed.2d 382 (1976), CSC maintains that a court of appeals may not decide in the first instance whether a bargaining unit remains appropriate—one of the prerequisites to imposition of successorship obligations under the labor laws—[3] because unit determinations lie within the Board's primary jurisdiction. In a related argument CSC further contends that it is a denial of due process to impose contempt sanctions upon it in the same proceeding in which it is first determined that the court's prior judgment is binding upon it, citing *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973). Finally, CSC maintains that it is not a "successor" to FEC under the labor law meaning of that

term as defined in *NLRB v. Burns International Security Services, Inc.*, 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972).

■ We need not address each of the issues CSC raises. Notwithstanding any power this court might have to determine the successorship question as ancillary to enforcement of the prior decree, we deem it unwise for policy reasons to do so in this case. We hold that when a dispute over successorship is bona fide, it is inappropriate for this court to decide it on a contempt application. When the dispute over successorship liability is but a sham, this court may proceed via contempt proceedings.

## III

■ In the context, like that here, of a competitive bidder relationship between the first employer and the alleged successor, *NLRB v. Burns International Security Services, Inc.*, 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972), established the test for determining when the subsequent employer is a successor bound by the predecessor's obligation to bargain with the union. "[W]here the bargaining unit remains unchanged and the majority of the employees hired by the new employer are represented by a recently certified bargaining agent," the new employer has a duty "to bargain with the incumbent union." *Id.* at 281, 92 S.Ct. at 1579. The first element of the *Burns* test—whether the bargaining unit remains appropriate under the new employer—is an intensely factual inquiry, which may be decisively affected by changes in operational structure or practices under the new employer. *Id.* at 280, 92 S.Ct. at 1578; see *NLRB v. Zayre Corp.*, 424 F.2d 1159 (5th Cir. 1970) (engaging in extensive examination and comparison of the two employers' organizational structures and operations). In this case, CSC argues that organizational and operational changes imple-

---

**2.** In pertinent part the rule provides that an "order granting an injunction ... is binding only ... upon those persons in active concert or participation with [the parties to the action, their officers, agents, servants, employees, and attorneys] who receive actual notice of the or-

der by personal service or otherwise." Fed.R. Civ.P. 65(d).

**3.** *NLRB v. Burns Int'l Security Servs. Inc.*, 406 U.S. 272, 281, 92 S.Ct. 1571, 1579, 32 L.Ed.2d 61 (1972).

mented among its employees preclude a finding of successorship. It points specifically to the fact that under FEC's operations, commercial programmers and scientific programmers were completely segregated both physically and functionally such that a bargaining unit composed only of commercial programmers was appropriate. Under its policies for providing services, however, CSC cross-trains these two groups, placing them in a single department; maintains the same education and experience requirements, the same salary structure and benefits, and the same career path for both; and provides interaction among these employees. Hence it argues that a unit composed only of commercial programmers is no longer appropriate. Further alleged to be relevant to the unit determination issue is a presumption under Board precedent against a unit of less than all of a company's technical employees who share a community of interest.[4]

As with the first element of the Burns inquiry, the second is also fact-laden, and, again as with the first, it is also the subject of considerable dispute between the Board and CSC. The parties present different figures for assessing whether former FEC bargaining unit employees constitute a majority of the relevant CSC work force.

 Reasons akin to those underlying the doctrine of exhaustion of administrative remedies persuade us that it is ill-advised to resolve these highly factual and close issues before the agency possessing expertise in these matters has passed upon the question of continued appropriateness. The policies advanced by requiring exhaustion of administrative remedies prior to judicial review of agency action include more complete development of the factual record by the agency and the observance of administrative autonomy, particularly as to decisions involving the exercise of discretionary powers granted the agency by Congress or requiring the application of special expertise possessed by the agency. McKart v. United States, 395 U.S. 185, 194, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969). From what we have set out above regarding the Burns test, it clearly appears that further development of the factual record in this case would indeed be beneficial. Moreover, we are mindful of the large measure of discretion granted the agency under its statutory authority to make unit determinations, 29 U.S.C. § 159(b), and of the limited role of the courts of appeals in reviewing such determinations. Packard Motor Co. v. NLRB, 330 U.S. 485, 491, 67 S.Ct. 789, 793, 91 L.Ed. 1040 (1947); NLRB v. WKRG–TV, Inc., 470 F.2d 1302, 1312 (5th Cir. 1973) ("[B]oth administrative expertise and judicial efficiency demand that we do not sit as a super-reviewing board to determine the correctness of every unit determination made by the Board.") Therefore we believe that any judicial determination of the successorship liability of CSC is better postponed until there has been agency action.[5] In our view this manner of proceeding more fully accords with the congressional distribution of authority between executive agencies and the judicial branch.[6] Cf. South Prairie Con-

4. E.g., Astronautics Corp. of America, 210 N.L.R.B. 650 (1974); Whitehead & Kales Co., 196 N.L.R.B. 111 (1972); The Bendix Corp., 150 N.L.R.B. 818 (1964).

5. In this case, as we noted above, there is a pending unfair labor practice charge against CSC for its refusal to bargain with the union. The Board hearing on the charge must necessarily entertain the issue of CSC's status as a bona fide successor.

6. We do not commend the Board for resorting first to the courts rather than proceeding on the pending unfair labor practice complaint lodged with it. It is somewhat ironic that we find ourselves issuing such a reprimand, for it is usually the agency which argues against pre-

mature judicial intervention and in favor of allowing the administrative process to run its course. At oral argument the Board's counsel confessed that this is the first case in which it has sought to resolve the successorship issue via judicial contempt proceedings rather than an unfair labor practice proceeding. Motivating the agency's choice was a concern with the rapid turnover of contractors at the Kennedy Space Center and the resultant increased difficulty in enforcing a bargaining obligation. That a contempt proceeding in a court of appeals would prove a more expeditious means of handling the matter is a questionable assumption, given the crowded dockets which have become commonplace. To be sure, the cumbersomeness of the administrative machinery

struction Co. v. Local No. 627, International Union of Operating Engineers, 425 U.S. 800, 96 S.Ct. 1842, 48 L.Ed.2d 382 (1976) (per curiam) (primary jurisdiction of Board to determine appropriate bargaining unit precludes court of appeals' determination of question in the first instance).[7]

In addition, the interest in uniformity within federal labor law convinces us that we should await agency action. We are concerned that allowing initial court determination of unit questions via contempt proceedings would set courts of appeals on a course of developing their own standards for unit appropriateness—standards which might reflect judgments differing from those of the agency with expertise in labor matters. Just as it is important that the Board itself maintain a consistent approach in its unit determinations, NLRB v. WKRG–TV, Inc., 470 F.2d 1302, 1311 (5th Cir. 1973), we think it important to avoid divergent administrative and judicial standards for such determinations.

The former Fifth Circuit's opinion in NLRB v. Tempest Shirt Manufacturing Co., 285 F.2d 1 (5th Cir. 1960), is not contrary to our holding today. To be sure, implicit in the court's undertaking in Tempest to determine on its own the successorship question in the contempt context is the notion that such a manner of proceeding is appropriate. However, the objections voiced in this case to an initial judicial determination of successor liability via contempt proceedings were apparently not raised in Tempest. We therefore do not presume the court to have considered and determined the issue of the propriety of its so proceeding when the question was not argued or briefed by the parties. Moreover, Tempest is distinguishable on another ground. Unlike the present case, in Tempest the same individuals who were officers in the predecessor company retained controlling ownership in the successor. This was one of several factors prompting the court to comment: "It is quite obvious in this case that there has not been any substantial business change . . . ." Id. at 4. Resolution of the successorship question here is not quite so obvious.

Finally, we observe that the Board relies on the Eighth Circuit's decision in NLRB v. Ozark Hardwood Co., 282 F.2d 1 (8th Cir. 1960), for the proposition that there is no due process or other barrier to a court of appeals' initially resolving the successorship issue in a contempt proceeding. Indeed, the Eighth Circuit did state: "This [successorship question] was an inquiry in which the court could itself have ancillarily engaged, in attempted effectuation of its decree, by means of a contempt citation and a show cause order." Id. at 4 (emphasis added). More instructive, however, is the manner in which the court actually proceeded in that case. It granted the Board leave to conduct a supplemental proceeding to resolve the question and then entered a supplemental decree after reviewing the Board's determination. In this case we deem proper and orderly judicial functioning to require a prior agency determination regarding whether CSC has assumed any successorship obligations.

---

and the process of seeking enforcement in a court of appeals is lamentable. But if a cure is needed, it lies in the streamlining of those procedures by Congress, not in disregard of the machinery currently in place.

7. In South Prairie there had been no determination by the Board of the appropriateness question before the court of appeals undertook review of the Board's dismissal of an unfair labor practice complaint. In this case, on the other hand, there has been a Board determination that a unit of commercial programmers is appropriate at least under FEC's operations. CSC therefore seeks an extension of the South Prairie holding in asking us to conclude that the Board's primary jurisdiction precludes a court of appeals from initially determining that this bargaining unit remained appropriate. We do not decide whether this extension is in order. We acknowledge, however, that the reasons compelling the holding in South Prairie are among the policies advising our decision to defer to agency action. See id. at 805–06, 96 S.Ct. at 1844–45 (Board's discretion and the interests in orderly judicial review and proper observance of the congressional allocation of authority). We simply do not erect an absolute bar to the exercise of a court of appeals' jurisdiction, particularly in contempt cases in which the employer's contention that it is not a bona fide successor is clearly a sham.

## IV

It appears from what we have set out above, from the special master's report, and from the statements of the Board's counsel that the dispute over successorship in this case is bona fide. Hence we decline for policy reasons to adjudicate CSC's contempt liability. CSC's motion to dismiss the contempt petition, which has been carried with the case, is granted. The Board's petition for contempt is DISMISSED without prejudice to further proceedings before the NLRB.