**BROTHERHOOD OF TEAMSTERS, LOCAL NO. 70, Plaintiff-Appellant,**

v.

**CALIFORNIA CONSOLIDATORS, INC., Defendant-Appellee.**

No. 81–4292.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 14, 1982.

Decided Nov. 2, 1982.

David A. Rosenfeld, Van Bourg, Allen, Weinberg & Roger, San Francisco, Cal., for plaintiff-appellant.

James A. Carter, Spector, Stevens & Carter, San Francisco, Cal., for defendant-appellee.

Before BROWNING, Chief Judge, SWYGERT * and WRIGHT, Circuit Judges.

PER CURIAM:

Local 70 wants to represent the employees at California Consolidators, Inc. To that end, on November 17, 1980, it filed a complaint against Consolidators under section 301(a) of the Labor-Management Relations Act. 29 U.S.C. § 185(a). It alleged that Consolidators and Marathon Delivery Services constituted a single employer and sought a declaratory judgment that Consolidators was bound by the union's collective bargaining agreement with Marathon.

Consolidators is a trucking firm engaged in handling, warehousing, and shipping containerized cargo. It was formed in Los Angeles in 1976 and expanded to open a facility in Oakland in 1978. Employees at neither location are represented by Local 70 or any other union.

* Of the Seventh Circuit.

Marathon is a pool car distributor and conducts local and long distance drayage. It has operated in Oakland for about 20 years and in Los Angeles since about 1975. Local 70 and Marathon have maintained a collective bargaining relationship for many years.

The company filed a motion for summary judgment. It alleged, among other things, that the court lacked jurisdiction because the National Labor Relations Board commands exclusive jurisdiction over the single employer issue. The district court declined to consider any factual matters and treated the motion as one to dismiss, which it granted.

We must decide whether the district court determined correctly that it lacked jurisdiction to adjudicate the complaint. Our review begins by recognizing the congressional division of responsibility in questions of national labor law and policy between the executive branch, represented by the National Labor Relations Board, and the judiciary.

The Supreme Court examined that allocation in *South Prairie Construction Co. v. Local 627, International Union of Operating Engineers*, 425 U.S. 800, 96 S.Ct. 1842, 48 L.Ed.2d 382 (1976) (per curiam). The Board had determined that South Prairie and Kiewit were not single employers, precluding application of the union contract with Kiewit to the employees of South Prairie. The court of appeals reversed, holding that the companies should be considered a single employer. It went on to conclude that the combined work force constituted an appropriate bargaining unit.

The Supreme Court condoned the lower court's determination of the single employer issue, but reversed the assertion of jurisdiction to decide whether the employees of both companies constituted an appropriate

bargaining unit. By deciding the unit question in the first instance, the court had intruded upon the primary competence of the Board for deciding the appropriateness of bargaining units.

Congress in § 9 of the National Labor Relations Act entrusted the appropriateness question to the Board. 29 U.S.C. § 159. It gave the Courts of Appeals the duty to review the Board's conclusions. The *South Prairie* Court explained:

> In foreclosing the Board from the opportunity to determine the appropriate bargaining unit under § 9, the Court of Appeals did not give "due observance [to] the distribution of authority made by Congress as between its power to regulate commerce and the reviewing power which it has conferred upon the courts under Article III of the Constitution." *FCC v. Pottsville Broadcasting Co.,* 309 U.S. 134, 141 [60 S.Ct. 437, 440, 84 L.Ed. 656] (1940).

425 U.S. at 806, 96 S.Ct. at 1845. *See also Computer Sciences Corp. v. NLRB,* 677 F.2d 804, 808 n. 7 (11th Cir. 1982) (*South Prairie* commands a "proper observance of the congressional allocation of authority").

We recently applied that principle to a § 301 action in *Local 3–193 International Woodworkers v. Ketchikan Pulp Co.,* 611 F.2d 1295 (9th Cir. 1980). There we recognized:

> Congress did not intend by enacting Section 301 to vest in the courts initial authority to consider and pass upon questions of representation and determination of appropriate bargaining units.

611 F.2d at 1301.[1]

The most relevant aspect of *South Prairie* is its necessary implication that single employer questions comprise two subsidiary issues. 425 U.S. at 804, 96 S.Ct. at 1844. In *NLRB v. Don Burgess Construction Corp.,*

---

1. In *Ketchikan Pulp,* the union and the company agreed to a contract provision stating that the union would be the sole collective bargaining agent for the company's employees. At the time, the company conducted only one logging operation. During the life of the contract the employer acquired several other logging sites, which were geographically distinct, inter-

changed no employees, and operated autonomously by subsidiary corporations.

The employer refused to recognize the union as the representative of its employees at its other sites. The union sued under § 301 seeking a declaration that it represented these employees.

We refused to permit the union to use § 301 for representation purposes, stating:

596 F.2d 378 (9th Cir.), *cert. denied,* 444 U.S. 940, 100 S.Ct. 293, 62 L.Ed.2d 306 (1979), we explained the extent of the division:

> [T]hat two companies have been designated a single employer ... is not determinative as to whether both are bound by a union contract signed by one of them. This requires that the employees of each constitute a single bargaining unit.

596 F.2d at 386.

A district court may decide under § 301 whether two companies constitute a single employer. *Metropolitan Detroit Bricklayers District Council, International Union of Bricklayers v. J.E. Hoetger & Co.,* 672 F.2d 580, 583 (6th Cir. 1982).[2] But a single employer conclusion fails to determine that the employees form a single or an appropriate

bargaining unit. *NLRB v. Don Burgess Construction Corp.,* 596 F.2d at 386; *accord Road Sprinkler Fitters Local 669 v. NLRB,* 676 F.2d 826, 830 (D.C.Cir.1982); *NLRB v. Big Bear Supermarkets No. 3,* 640 F.2d 924, 931 n. 7 (9th Cir.), *cert. denied,* 449 U.S. 919, 101 S.Ct. 318, 66 L.Ed.2d 147 (1980).

While § 301 grants the district court jurisdiction to decide whether employers constitute a single employer, we conclude that it does not extend to the determination of the second part of the issue, the appropriateness of the bargaining unit.[3] The district court properly concluded that it had no jurisdiction to decide the precise issue framed by the union's complaint.[4]

Local 70 sought a declaration that Consolidators was bound to the collective bargaining agreement signed by Marathon, not

---

In the present case the Union is attempting an end run around Section 9 of the Act and under the guise of contract interpretation wants to avoid self-determination of a bargaining agent by a substantial number of employees and determination of an appropriate bargaining unit by the NLRB, which has primary authority in this area. This cannot be countenanced.

611 F.2d at 1299–1300. Nevertheless, we concluded that the court had jurisdiction to construe the contested contract clause because its "sole operative effect" affected neither representation nor the determination of an appropriate unit. *See id.* at 1301.

2. In *J.E. Hoetger & Co.,* the union sued a general contractor under § 301 for payment of fringe benefits left unpaid by a bankrupt subcontractor, alleging that they were joint employers. The court noted that § 301 generally creates jurisdiction only over signatories to a contract, but concluded that, "since the primary issue in this case is whether [the general contractor] was a 'joint employer' such that it could be bound by the collective bargaining agreement, ... the district court had jurisdiction." 672 F.2d at 583.

Deciding whether the general contractor should be held responsible for fringe benefits owed by its subcontractor required the district court to decide neither the appropriateness of a unit nor any other question of representation. Its consideration of the joint employer question did not threaten to invade the Board's area of expertise.

3. Sound policy reasons counsel against initial determination of unit questions by the courts. Most significant among them is to avoid the potential for creating a "tangled mass of judi-

cial and administrative conflict." *Local 204, International Brotherhood of Electrical Workers v. Iowa Electric Light & Power Co.,* 668 F.2d 413, 419 (8th Cir. 1982).

In *Computer Sciences Corp. v. NLRB,* 677 F.2d 804, 808 (11th Cir. 1982), the court refused to decide in contempt proceedings that a unit remained appropriate after a change in employers. Its reasoning is equally applicable to the district courts' consideration of unit questions. The court wrote:

> We are concerned that allowing initial court determination of unit questions ... would set courts ... on a course of developing their own standards for unit appropriateness— standards which might reflect judgments differing from those of the agency with expertise in labor matters. Just as it is important that the Board itself maintain a consistent approach in its unit determinations, we think it important to avoid divergent administrative and judicial standards for such determinations.

677 F.2d at 808 (citation omitted).

4. We would reach the same result under the test advocated by the Eighth Circuit in *Local 204, International Brotherhood of Electrical Workers v. Iowa Electric Light & Power Co.,* 668 F.2d 413 (8th Cir. 1982), in which the court concluded:

> We believe the appropriate line between those cases where the district court has jurisdiction under section 301 and those in which it does not is to be determined by examining the major issues to be decided as to whether they can be characterized as primarily representational or primarily contractual.

*Id.* at 419 (citing *Cappa v. Wiseman,* 659 F.2d 957 (9th Cir. 1981)).

merely that the companies constituted a single employer. If the complaint had stated an actual controversy and requested declaratory relief that the companies were a single employer, the court would have had jurisdiction to determine it. Instead, it sought relief that would require the court to decide the appropriateness of a bargaining unit, a representational question reserved in the first instance to the Board.[5]

It appears the district court believed it also had no jurisdiction over any part of the single employer issue. Consequently, we remand for further proceedings including an evidentiary hearing on this issue. If so requested the plaintiff should be permitted to amend its complaint.

REMANDED.

Local 204 had been certified as the bargaining representative for a unit of quality control inspectors at a nuclear power plant. It sued under § 301 for breach of contract after the employer contended the employees were supervisory personnel and refused to bargain.

The court reversed the district court's assertion of jurisdiction. Although the Board already had determined the appropriate unit question, the district court had no jurisdiction because the case was but a "poorly veiled attempt to obtain direct review of a representational matter by invoking section 301 contract jurisdiction." 668 F.2d at 420.

Although *Iowa Electric* presents issues different from those on appeal here, were we to apply its test, we would find the single employer question to be primarily contractual and subject to district court jurisdiction. But the unit determination necessary for declaring the nonsignatory employer bound by a collective bargaining agreement remains primarily representational, thereby outside the appropriate jurisdiction of the district court.

Nor does *Cappa v. Wiseman*, 659 F.2d 957 (9th Cir. 1981), cited by *Iowa Electric*, provide additional guidance. There, we were concerned with the admissibility of an oral agreement concerning the scope of a bargaining unit.

Because the power of the parties to limit the application of their collective bargaining agreement is a procedural question not involving the substantive decision whether a bargaining unit is appropriate, we determined that "the appropriateness of the bargaining units, in the sense that the NLRB determines it, is not an issue

...." *Id.* at 959. *See Metropolitan Detroit Bricklayers District Council, International Union of Bricklayers v. J.E. Hoetger & Co.*, 672 F.2d 580 (6th Cir. 1982). We concluded that "court determination of the issue does not conflict with our previous holding that issues of representation and appropriateness of bargaining units are within the primary jurisdiction of the NLRB." 659 F.2d at 960 (citing *Ketchikan Pulp*).

5. In *Local 59, International Brotherhood of Electrical Workers v. Namco Electric, Inc.*, 653 F.2d 143 (5th Cir. 1981), the district court dismissed the union's § 301 action in which it sought to bind a nonsignatory employer to a collective bargaining agreement alleging it to be the alter ego of the signatory. The Fifth Circuit affirmed, but did so on the basis that the companies were not alter egos.

Although *Namco Electric* purportedly declined to decide the scope of district court jurisdiction, 653 F.2d at 146, its result is not inconsistent with our holding here. We have concluded that a court may decide under § 301 the first portion of the single employer question (and of joint employer or alter ego questions as well) without intruding upon the province of the Board. Only the additional finding necessary to conclude that a contract is binding because the companies constitute a single employer is beyond the court's appropriate jurisdiction. The *Namco Electric* court's determination of the alter ego question extended no further.