INTERNATIONAL BROTHERHOOD
OF ELECTRICAL WORKERS,
LOCAL 613

v.

FOWLER INDUSTRIES, INC.; Fowler
Electric Co., Inc. Steve Fowler Electri-
cal Contractors, Inc.; Clark Electrical
Contractors, Inc.; and Samuel Lewis
Fowler, Jr., Individually.

No. 1:87–CV–552–CAM.

United States District Court,
N.D. Georgia,
Atlanta Division.

July 21, 1988.

Frank Barry Shuster, Blackburn Shuster King & King, Atlanta, Ga., for Intern. Broth. of Elec. Workers, Local 613.

Ira J. Smotherman, Jr. Stokes, Shapiro, Fussell & Wedge, Atlanta, Ga., for all defendants.

## ORDER

MOYE, Senior District Judge.

The above-styled action is before this Court on the defendants' motion for dismissal of the complaint or for summary judgment on jurisdictional grounds. For the reasons stated below, the Court GRANTS the defendants' motion to dismiss the complaint without prejudice.

### I. Facts

This action was brought under section 301 of the National Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a) (1982), by International Brotherhood of Electrical Workers, Local 613 ("Local 613"), a Labor organization, against four corporate defendants. The plaintiff alleges breach of a collective bargaining agreement by the defendants. Defendant Fowler Electric Company, Inc. ("FEC") has continuously been a signatory to said collective bargaining agreement, or a successor agreement, with Local 613, since 1962. Defendant Fowler Industries, Inc. ("FI"), Steve Fowler Electrical Contractors, Inc. ("SFEC") and Clark Electrical Contractors, Inc. ("CEC") were incorporated and started in business in 1983. None of the latter

three entities have executed any collective bargaining agreements with the plaintiff.

The final defendant, Samuel Lewis Fowler, ("Fowler") an electrical subcontractor, has for many years owned and operated FEC. It is undisputed that FEC has been a union shop since 1962, when Fowler first executed a prehire agreement with the plaintiff union which represents electrician craftsmen in the Atlanta area. Thereafter, Fowler and the union executed successive labor agreements for FEC, up to and including the time this action was filed. During the entire period from 1962 through the present, FEC has paid its employees wages and benefits fixed by the union contract.

Defendants SFEC and CEC, both formed in 1983, are also in the electrical contracting business, but neither has ever been a party to any collective bargaining agreement with Local 613. The defendants assert that there has been little or no interchange of apprentices, electricians, or foremen between FEC, SFEC and CEC. The defendants further assert that due to the nature of the contracting business, the field employees of FEC, SFEC and CEC report to work at their respective job sites, and have no contact with each other on their separate job sites.

On the other hand, plaintiff claims that Fowler attempted to create nonunion subcontracting businesses by a series of corporate transactions designed to create a separation between the union and nonunion enterprises. FI was created to serve in part as a holding company for FEC, SFEC, and CEC. FI became the sole stockholder of both FEC and SFEC. Samuel Lewis Fowler owns all the stock of FI.

The plaintiff asserts that when Fowler created FI and SFEC, he transferred all the tools, equipment and vehicles owned by FEC to the holding company and thereafter rented them to both the union and nonunion enterprises. He also created identical administrative service agreements under which FI provided both contractors with bookkeeping, accounting, data processing, payroll, billing, invoicing, and treasury and insurance advice. The services are provided by the same individuals.

Since their inception, the new corporations have operated out of the same building and used the same legal and accounting advisors. FE, SFE, and FI file consolidated tax returns, and money is advanced between the corporations on an as needed basis.

Plaintiff further asserts that in 1983, 23 former employees of FEC went to work for FI or SFEC in such positions as engineer, estimator, project manager, journeymen, electrician, warehouse and clerical help. However, according to Fowler, employees who transferred from the union shop to one of the new corporations quit working at FEC before applying for employment at SFEC. Finally, the plaintiff asserts that although CEC is labeled a minority business due to the fact that a Mr. Clark owns 51 percent of the stock, Fowler retains 49 percent of the stock and extensive control of operations. Thus, the plaintiff claims that FEC, FI, SFEC, and CEC are all bound to the prehire agreement signed by FEC because they are all parts of a single employer.

Counts one and two of the complaint allege that defendants FI, FEC, SFEC, and CEC are collectively bound to the collective bargaining agreement entered into between FEC and Local 613. In count one the plaintiff claims that all these defendants are a single integrated operation under the National Labor Relations Board's ("NLRB") "single employer" doctrine. Count two of the complaint similarly alleges that an "alter ego" relationship exists between FI, FEC, SFEC, and CEC such that all are bound by the collective bargaining agreement.

The complaint was amended on October 26, 1987, adding defendant Samuel Lewis Fowler and an additional count. Count three of the amended complaint alleges that Fowler, FI, SFEC, and CEC have tortiously interfered with the contract between FEC and Local 613 and have tortiously interfered with union business.

Defendants have filed a motion to dismiss the complaint or for summary judgment on jurisdictional grounds.

## II. Counts I and II of the Complaint

### A. Determination of the "Appropriate Bargaining Unit" Is Required Under Both the "Single Employer" and "Alter Ego" Theories

■ Under the "single employer" theory, two determinations must usually be made in order to bind non-signatory employers like SFEC and CEC to a collective bargaining agreement. First, it must be determined that the signatory employer, in this case FEC, and any non-signatory employer(s), under "all circumstances of the case" and in "the absence of an arms-length relationship" constitute, in fact, a single employer. *Carpenters Local Union No. 1846 v. Pratt–Farnsworth, Inc.,* 690 F.2d 489, 505 (5th Cir.1982).[1] However, the mere finding of single employer status is insufficient to bind the non-signatory employers to the collective bargaining agreement. *Id. see also, South Prairie Construction Company v. Local No. 627,* 425 U.S. 800, 805, 96 S.Ct. 1842, 1844, 48 L.Ed. 2d 382 (1976). Second, there must also be a determination of the appropriate bargaining unit. (*Pratt–Farnsworth,* 690 F.2d at 505. A finding of single employer status does not establish the appropriate bargaining unit. *South Prairie,* 425 U.S. at 805, 96 S.Ct. at 1844.

■ The alter ego theory, which forms the basis for Count II of the complaint, involves consideration of factors similar to those considered under the single employer doctrine. *Pratt–Farnsworth,* 690 F.2d at 507. However, the focus of the alter ego doctrine, unlike the single employer doctrine, is on the existence of a disguised continuance or an attempt to avoid the obligations of a collective bargaining agreement through a sham transaction or technical change in operations. *Id.* at 508. The alter ego doctrine requires a less rigorous inquiry into the appropriate bargaining unit than the single employer doctrine when the NLRB is conducting the inquiry. *Id.*

■ Although theoretically applicable to the present situation, the alter ego doctrine is usually used to bind a successor corporation to its predecessor's collective bargaining agreement. *See, Id; see also, Board of Trustees Container Mechanics Welfare/Pension Fund v. Universal Enterprises, Inc.,* 751 F.2d 1177 (11th Cir.1985). Therefore, a lesser inquiry into the appropriate bargaining unit by the NLRB is logically justified where a successor corporation has substantially the same structure and employees as did its predecessor under the collective bargaining agreement in issue. The present case is distinguishable from the successor situation in that the Fowler entities are not merely a single successor or even a group of successors to FEC that have simply changed ownership. They are structurally different from FEC with a much different total employee base. Thus, it would appear that a more indepth inquiry into the appropriate bargaining unit is warranted than in the typical successor alter ego case.

The ultimate consideration is that, even absent the immediately foregoing analysis, the alter ego theory, like the single employer theory, involves a unit determination in most cases. The same analysis applies to single employer and alter ego claims in district court as to whether a unit determination is necessary. *See, Universal,* 751 F.2d at 1184. The central assertion of the defendants in their motion to dismiss is that unit determinations are matters of primary NLRB jurisdiction, and therefore this case should be dismissed and the dispute brought before the NLRB.

### B. A Unit Determination Is Necessary in this Case and Such Determination Is to be Made Initially by the NLRB

The primary assertion on which the defendants rely as the basis for dismissal is

---

1. The NLRB text examines four factors to determine whether two separate entities in fact constitute a single employer:
   (1) Interrelation of operations;
   (2) Interrelation of management;
   (3) Centralized control of labor relations; and
   (4) Common ownership.
   *Id.* at 504; *e.g., South Prairie Construction Co. v. Local No. 627,* 425 U.S. 800, 802–03, 96 S.Ct. 1842, 1843, 48 L.Ed.2d 382 (1976).

that a determination of the proper bargaining unit is required under the theories asserted in the complaint and such determination is initially the province of the NLRB. There is a split of authority as to whether the initial determination of appropriate bargaining unit is reserved to the NLRB. Unfortunately, the Eleventh Circuit has not decided this issue, but in dictum the Circuit Court has provided indications of its position.

The plaintiff relies on the Fifth Circuit Court of Appeals' decision in *Pratt–Farnsworth*, 690 F.2d at 509 for the proposition that unit determinations can be made initially by the district courts in section 301 cases such as the present case. The Fifth Circuit held that LMRA § 301 empowered a federal district court to decide the appropriate bargaining unit where this decision is essential to the resolution of a breach of contract claim, thus circumventing the NLRB's statutory authority under National Labor Relations Act ("NLRA") § 9(b). 690 F.2d at 517. Thus, the *Pratt–Farnsworth* court asserts that LMRA § 301 *always* confers the authority on a district court to determine bargaining unit issues, absent a prior NLRB determination when "alter ego" and "single employer" issues are involved.

In contrast to the *Pratt–Farnsworth* holding are statements from two Ninth Circuit cases. *Brotherhood of Teamsters, Local No. 70 v. California Consolidators, Inc.*, 693 F.2d 81, 83 (9th Cir.1982) (LMRA § 301 grants the district court jurisdiction to determine whether employers constitute a "single employer", but not the appropriateness of the bargaining unit, which is reserved to the NLRB); *Local No. 3–193 International Woodworkers of Am. v.*

*Ketchikan Pulp Co*, 611 F.2d 1295, 1299 (9th Cir.1980) ("This declaration of the strong policy of judicial deference to initial determination by the NLRB of representation issues is equally applicable to actions under Section 301.") Furthermore, the *Pratt–Farnsworth* decision conflicts with statements of the law by the Eleventh Circuit in *Computer Sciences Corp. v. N.L.R.B.*, 677 F.2d 804 (11th Cir.1982), and *Board of Trustees v. Universal Enterprises, Inc.*, 751 F.2d 1177 (11th Cir.1985).[2] In *Universal* the Eleventh Circuit stated, "It is certainly true that often times the existence of a collective bargaining agreement depends on the existence of the appropriate bargaining unit, *which only the NLRB may determine.*" *Id.* at 1184. (emphasis added.) Thus, the defendant asserts that only in the absence of a bargaining unit issue, or where a prior NLRB unit determination has been made, does the district court have jurisdiction to adjudicate the union's "single employer" or "alter ego" breach of contract claim and award a remedy, binding a non-signatory employer to a collective bargaining agreement.

■ The plaintiff asserts that a unit determination in this case is unnecessary or irrelevant. First, the plaintiff maintains that the contract executed by FEC already defines the unit of employees to which the contract applies, and thus no unit determination is needed. *Pratt–Farnsworth*, 690 F.2d at 523. The recognition clause in the agreement specifies only that defendant FEC, the signatory employer, "recognizes the Union as the sole and exclusive representative of all *its* employees performing work within the [trade and territorial] jurisdiction of" Local 613. (emphasis added).

---

**2.** Prior to the *Universal Enterprises* decision, Judge Ward cited *Pratt–Farnsworth* as persuasive authority in *International Union of Operating Engineers, Local 926 v. Superior Rigging and Erecting Co.*, 602 F.Supp. 913, 917 (N.D.Ga. 1984). Judge Ward distinguished *South Prairie Construction*, 425 U.S. 800, 96 S.Ct. 1842, (1976), and *Computer Sciences*, 677 F.2d 804 (11th Cir. 1982), on the grounds that neither of those actions arose in the context of a LMRA § 301 action to enforce a collective bargaining agreement, and the following *Pratt–Farnsworth*, declined to follow the Ninth Circuit's decision in

*Brotherhood of Teamsters, Local No. 70 v. California Consolidators, Inc.*, 693 F.2d 81 (1982) (discussed *supra* ). 602 F.Supp. at 917. Judge Ward's conclusion that the fundamental question of who is bound to a contract must necessarily be determined by the district court in a LMRA § 301 action, 693 F.2d at 916, conflicts with the Eleventh Circuit's language in *Universal Enterprises* that "the existence of a collective bargaining agreement [often] depends on the existence of an appropriate bargaining unit, which *only* the NLRB may determine." 751 F.2d at 1184 (emphasis added).

No other defendant has so recognized Local 613, either in writing or otherwise. Therefore, the contract clause does not appear to bind the non-signatory defendants.

■■■■ Furthermore, if the plaintiff's assertion that the recognition clause in the prehire agreement between FEC and Local 613 establishes an appropriate unit which includes the employees of the non-signatory employers were valid, then the recognition clause would have the same effect as an accretion clause.[3] As the Fifth Circuit stated in *Pratt–Farnsworth*, "enforcing such a clause would be a usurpation of the non-union employees' section 7 rights and the NLRB's exclusive jurisdiction to determine the appropriate bargaining unit." 690 F.2d at 525, n. 17 (citing *Florida Marble Polishers Health and Welfare Fund v. Edwin M. Green, Inc.* 653 F.2d 972, 976 (5th Cir.1981).

However, the plaintiff points out that in *Pratt–Farnsworth*, the Fifth Circuit concluded that a prehire collective bargaining agreement, such as the one in the present case, does not pose the same problems as those associated with an accretion clause. Therefore, the Fifth Circuit held that a prehire agreement can become fully enforceable by a union showing of majority status in the stipulated bargaining unit, rather than by a Board election or voluntary recognition by the employer. However, the distinction drawn by the Fifth Circuit between enforceability of an accretion clause and a unit stipulation in a prehire agreement is no longer valid, because of the dramatic change in the way the Board treats the enforceability of prehire agreements. . The *signatory* employer's employees are presumed to be the appropriate unit, and a prehire agreement will become a fully enforceable NLRA section 9(a), 29 U.S.C. § 159(a), collective bargaining agreement only after a NLRA § 9(c) election or voluntary recognition by the employer. *John Deklewa & Sons*, 2282 N.L.R.B. No. 184, 1986–87 NLRB Dec. (CCH) ¶ 18,549 (Feb. 20, 1987), *aff'd sub nom. Iron Workers Local 3 v. NLRB*

*[John Deklewa & Sons ]*, 843 F.2d 770 (3d Cir.1988).

Second, as discussed briefly above in connection with the plaintiff's first contention, the plaintiff claims that the policy considerations normally involved with a unit determination (such as the employees' right to select a bargaining representative and the existence of a community of interests between the employees included in the unit the union seeks) do not apply when the underlying labor contract is a section 8(f) prehire agreement. The plaintiff cites *Jim McNeff, Inc. v. Todd*, 461 U.S. 260, 271–72, 103 S.Ct. 1753, 1759, 75 L.Ed.2d 830 (1983), in which the Supreme Court held *monetary obligations* assumed under a valid NLRA section 8(f) prehire agreement are enforceable as to the signatory parties to that agreement without a showing of majority support for the union. It does not follow that the Court intended its decision to erode the NLRA section 7 protection of the interests of the employees covered by such a prehire agreement. In *Jim McNeff*, unlike the present action, there was no question of who was bound by the prehire agreement, and there was no attempt by the union to expand the unit beyond the employees of the signatory employer. The issue before the Supreme Court was whether an employer's monetary obligations under a prehire contract could be enforced in a LMRA § 301, 29 U.S.C. § 185, action prior to the effective repudiation of the contract. The Court reasoned that the enforcement of the signatory employer's monetary obligations did not impair the employees' right to freely select their own bargaining agent. Therefore, majority support for the union was not a condition precedent to enforce the contract against the employer, who voluntarily entered into the agreement, obtained the benefits thereof, and failed to live up to his end of the bargain. *Id.* at 269–71, 103 S.Ct. 1758–59.

■■■ In the present case, unlike *McNeff*, a unit determination is necessary to insure protection of the section 7 rights of employees of the non-signatory parties. Such a

---

**3.** An accretion clause purports to expand the unit *without* an election as an employer gains

new employees through the acquisition of other business enterprises.

determination is best made initially by the NLRB in the interests of uniformity of standards and insuring that the inquiry is made by a body with expertise in such matters. *See, Computer Sciences,* 677 F.2d at 808.

### III. Count III of the Complaint

■ Count three of the complaint alleges that the nonsignatory Fowler entities, FI, SFEC, and CEC, and Fowler have tortiously interferred with the contract between FEC and Local 613. The parties agree, and the Court concurs, that inasmuch as count three relates to tortious interference with contract, which requires resort to contract terms to resolve, it should be decided as a matter of federal law. *See, Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985).

■ The plaintiff claims independent jurisdiction for count three under 29 U.S.C. § 185. The plaintiff has cited a number of cases establishing that a cause of action for tortious interference with contract exists under section 301 of the LMRA. 29 U.S.C. § 185. *Local 472 v. Georgia Power Co.,* 684 F.2d 721 (11th Cir.1982); *Wilkes–Barre Publishing Co. v. Newspaper Guild Local 120,* 647 F.2d 372 (3rd Cir.1981); and *Local 1054 v. West Coast Industrial Relations Association,* 116 L.R.R.M. (BNA) 3175 (W.D.Wa. June 21, 1984). *Local 1054 v. West Coast Industrial Relations Association* is the only case cited by plaintiff where a union filed suit against non-signatory parties for tortious interference with its contract with the signatory employer. However, plaintiff failed to advise in its memorandum that this case was later reversed by the Ninth Circuit. *Local 1054 v. West Coast Industrial Relations Association,* 775 F.2d 1042 (9th Cir. 1985). Furthermore, although a few courts appear to have indicated that section 301 subject matter jurisdiction exists over all suits for violation of collective bargaining agreements, *see, Wilkes–Barre,* 647 F.2d at 372; *Painting and Decorating Contractors Ass'n of Sacramento v. Painters and Decorators Joint Committee of the East Bay Counties, Inc.,* 707 F.2d 1067 (9th Cir.1983), the majority of courts apply a much narrower interpretation of section 301 jurisdiction. A district court does not have subject matter jurisdiction over a non-signatory to a collective bargaining agreement, where no rights or duties of the non-signatory party are stated in the terms of the contract. *Service, Hospital, Nursing Home and Public Employees Union, Local No. 47 v. Commercial Property Services, Inc.,* 755 F.2d 499 (6th Cir.1985), *citing, Pratt–Farnsworth,* 690 F.2d at 502, *Loss v. Blankenship,* 673 F.2d 942, 946 (7th Cir.1982); *Bowers v. Ulpiano Casal, Inc.,* 393 F.2d 421, 423 (1st Cir.1968); *Fox v. Mitchell Transport, Inc.,* 506 F.Supp. 1346, 1349 (D.Md.1981), *aff'd mem.,* 671 F.2d 498 (4th Cir.1981). Therefore, this Court concludes that it only has jurisdiction over count three of the complaint under section 301, if the defendants are bound to the prehire agreement. The defendants in count three will be bound to the prehire agreement only upon a finding that they are so obligated under the "single employer" or "alter ego" doctrines. Either of these findings would again require a determination of the appropriate bargaining unit. As discussed above, such a determination is initially the exclusive province of the NLRB. Therefore, the federal law grounds supporting count three under section 301 involve the same issues as counts one and two and must be dismissed without prejudice.

■ The question remains as to whether there are any state law grounds supporting count three which are not pre-empted by section 301. If the defendants are ultimately determined to be bound as signatories to the prehire collective bargaining agreement, then it appears that state based claims for tortious interference with contract would be pre-empted by 29 U.S.C. § 185. *See, Allis–Chalmers,* 471 U.S. at 202, 105 S.Ct. at 1904 (Where the resolution of a state law claim is substantially dependent on the analysis of the terms of a collective bargaining agreement, the claim must be treated either as a section 301 claim or dismissed as pre-empted by federal labor law.) However, if it is found that the defendants to count three are not bound to

the prehire agreement, then a state claim for tortious interference with contract which is not based on a theory requiring analysis of the terms of the contract arguably remains. On the other hand, the possible existence of a valid state law claim again depends on a determination which is initially the exclusive province of the NLRB and requires a fact-dependent finding that no preemptive federal remedy exists. Therefore, even if the state law claim presented by count three is not directly dependent on analysis of the terms of the labor agreement, it is at least indirectly dependent on such analysis and is preempted by federal law. *See, Dougherty v. Parsec, Inc.,* 824 F.2d 1477 (6th Cir.1987).

The clerk is DIRECTED to enter dismissal without prejudice as to all counts enumerated in the complaint. The clerk is further DIRECTED to close this case.