In the Matter of the Arbitration Between
LOCAL ONE, AMALGAMATED LI-
THOGRAPHERS OF AMERICA, affil-
iated with International Typographical
Union, AFL–CIO, Petitioner,

and

STEARNS & BEALE, INC.,
Respondent.

No. 85 Civ. 0421 (KTD).

United States District Court,
S.D. New York.

Dec. 17, 1985.

Robinson, Silverman, Pearce, Aronsohn & Berman, New York City, for petitioner; Michael O'Toole, of counsel.

O'Donnell, Fox, Gartner & Sobolewski, New York City, for respondent; Stuart F. Gartner, of counsel.

KEVIN THOMAS DUFFY, District Judge:

Petitioner, Local One, Amalgamated Lithographers of America, ("Local One"), affiliated with International Typographical Union, AFL–CIO, brings this action against respondent, Stearns & Beale, Inc. ("S & B"), seeking to confirm an arbitration award. Petitioner now moves pursuant to Fed.R.Civ.P. 56 for summary judgment. For the reasons set forth below, petitioner's motion is granted.

Local One is a labor organization which is the certified collective bargaining representative for all of the lithographic production employees of S & B, an employer

within the meaning of the National Labor Relations Act and a member of the Metropolitan Lithographers Association (the "MLA"). S & B is bound by two collective bargaining agreements (collectively referred to as the "Agreement") between Local One and the MLA which cover lithographic production employees of members of the MLA for the period from July 1, 1982 through June 30, 1987. Section 40 of the Agreement provides that any disputes arising under the Agreement "shall be submitted to a Joint Committee of [Local One] and the [MLA] ... [and] [i]f a decision by a majority of the Joint Committee is reached this shall be final and binding on the parties involved."

On June 3, 1983, Local One filed a grievance pursuant to section 40 of the Agreement alleging that S & B violated section 3(a) of the Agreement which provides that "[t]he Employers recognize [Local One] as the exclusive collective bargaining agent for all of the lithographic ... production employees in the plants or departments of the employees within [Local One's] territorial jurisdiction." Local One essentially claimed that the four lithographic production employees of AAA International Printing Co., Inc. ("AAA") were working for S & B and, because these employees were not being covered by the Agreement, section 3(a) of the Agreement was being violated by S & B.

On June 23, 1983, the Joint Committee met and, after hearing evidence, ruled that AAA and S & B were actually the same employers and that S & B must cover the AAA lithographic production employees under the terms of the Agreement. Subsequently, however, following a unit clarification hearing which was requested by S & B, the Regional Director of the National Labor Relations Board ("NLRB") ruled that the AAA lithographic production employees should not be considered an accretion to S & B's unit.

As a result of the Regional Director's decision, Local One requested the Joint Committee to reconsider its prior determination. After holding another hearing, the Joint Committee issued a revised decision. The Joint Committee ruled that, even given the Regional Director's decision that the AAA lithographic production employees were not part of S & B's collective bargaining unit, section 3(a) of the Agreement was still violated. However, instead of requiring S & B to cover the AAA lithographic production employees under the Agreement, the Joint Committee amended its prior decision and ruled that S & B "must immediately cease assigning lithographic production work to employees who are not covered by the collective bargaining agreement." Frank Casino Affidavit, Exh. E, 6–7 (Amended Decision of Joint Committee of Local One, Amalgamated Lithographers of America and Metropolitan Lithographers Association ("Amended Decision")).

S & B then filed an unfair labor practice charge against the MLA and Local One claiming the National Labor Relations Act was violated by the Joint Committee's Amended Decision. This charge was dismissed by the Regional Director of the NLRB, which dismissal was affirmed by the General Counsel of the NLRB.

Local One brought this action to confirm the arbitration award of the Joint Committee [1] and now moves pursuant to Fed.R. Civ.P. 56 for summary judgment.

## DISCUSSION

A summary judgment motion will be granted if there exists no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); see Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). In the instant case, no material questions of fact exist and petitioner is entitled to summary judgment as a matter of law.

---

1. The Amended Decision of the Joint Committee was rendered on September 24, 1984 and the instant petition was filed in January, 1985. Accordingly, the petition is not time-barred as it was filed within the one-year limitation period provided for in section 7510 of the New York Civil Practice Law and Rules.

Respondent first argues that paragraph 40(a)(3) of the Agreement requires petitioner to submit any issue of noncompliance with the Joint Committee's award to arbitration before seeking redress from the court. Paragraph 40(a)(3) of the Agreement provides in pertinent part:

If a decision by a majority of the Joint Committee is reached this shall be final and binding on the parties involved; if the decision is not complied with immediately the matter of compliance only may be submitted for arbitration to an arbitrator selected unanimously by the Joint Committee, and if no unanimous agreement, to the American Arbitration Association for arbitration under their rules, and if the arbitrator finds noncompliance he shall be required to render an award enforcing the decision of the Joint Committee.

Respondent seeks to have the word "may" interpreted to mean "must" in the phrase "if the decision [of the Joint Committee] is not complied with immediately the matter of compliance only may be submitted for arbitration." In support of this interpretation, respondent cites *Local 771, I.A.T.S.E., AFL–CIO v. RKO General, Inc.*, 546 F.2d 1107 (2d Cir.1977). However, *RKO General* is distinguishable from the present case.

In *RKO General* a dispute arose between a union and an employer and the union failed to demand arbitration within 90 days as was required by the collective bargaining agreement. When the union eventually did file its demand for arbitration, the arbitrator ruled that the demand was time-barred and that the dispute was therefore non-arbitrable. The Second Circuit refused to upset the arbitrator's finding. The issue next arose whether arbitration was the exclusive remedy available to the union. Even though the collective bargaining agreement provided, *inter alia,* that "[t]he parties may submit to arbitration," the court ruled that "[n]either the word 'may' nor any other language used in the Agreement implies that the parties had the option of invoking some remedy other than arbitration.... The sole option an aggrieved party retained through use of

the word 'may' was to abandon its claim." *RKO General*, 546 F.2d at 1115–16. Accordingly, the court held that "the arbitration clause ... was intended to foreclose resort to the district court for determination of a dispute concerning the interpretation of the Agreement." *Id.* at 1116.

■ Unlike in *RKO General*, however, where the interpretation of the terms of the collective bargaining agreement was the disputed subject matter and the substantive merits of the union's grievance were never presented to an arbitrator, the instant case concerns a matter which has already gone to arbitration and been decided on its merits by the arbitrator, as provided for by the Agreement. The issue, therefore, is whether the question of noncompliance with the arbitrator's decision must also be submitted to arbitration. I conclude that submission of the issue of non-compliance to the arbitrator is not mandatory. *RKO General* involved a situation where permitting the parties to bring their dispute to court "would in effect treat their agreement to arbitrate as a useless gesture...." *Id.* at 1116. The dispute in this case has already been arbitrated. Moreover, no purpose is served by sending the issue of compliance to arbitration as it is not disputed that S & B has failed to comply with the Joint Committee's decision. Furthermore, to find that petitioner must always resort to arbitration a second time would appear to directly contradict that portion of the Agreement which provides that the Joint Committee's decision "shall be final and binding on the parties involved." In sum, under the circumstances of this case, I read the word "may" in paragraph 40(a)(3) of the Agreement to possess the meaning normally ascribed to it (i.e. to be permissive). Accordingly, the issue of whether to confirm the Joint Committee's award is properly before the court.

S & B seeks to vacate the Joint Committee's Amended Decision alleging that two of the members of the Joint Committee, specifically Jack Gorman and Shirley Scoma, were biased against S & B. Included

among the grounds for vacating the award of an arbitrator is "[w]here there was evident partiality ... in the arbitrators...." 9 U.S.C. § 10(b).[2]

In support of its allegation of evident partiality, S & B claims that Arbitrator Gorman had "a direct financial interest in voting the way he did." Affidavit of Ronald Tolen, 5. Gorman's firm, LaSalle Industries, Inc., is a competitor of S & B. *Id.* at 1. It is also alleged that Arbitrator Scoma was biased against S & B's attorneys, and thus against S & B. Apparently S & B's attorneys, William G. O'Donnell, Esq., and Stuart F. Gartner, Esq., were the attorneys for Candace Steinbach, Scoma's step-daughter, in a matrimonial dispute with Sheldon Steinbach. According to S & B, "[w]hat is remarkable about the Steinbach matter is that Shirlee Scoma, the step-mother of [Candace Steinbach] and the 'grandmother' of the children, has vigorously supported Sheldon Steinbach throughout the litigation. Mrs. Scoma at one time submitted an affidavit in support of Sheldon Steinbach against her own daughter." Affidavit of Stuart F. Gartner, Esq., 2. Thus, reasons Mr. Gartner, "[i]t would be astounding to me, if Mrs. Scoma would be able to hear the evidence in the [S & B] matter impartially and even handedly when she well knew that we were the attorneys for [S & B], as well as her step-daughter." *Id.* at 3.

It is apparent from the record, however, that any alleged bias on the part of either Gorman or Scoma was known to S & B at the time of the arbitration. Moreover, S & B did not object to Gorman or Scoma until after the Joint Committee rendered its Amended Decision.[3] Accordingly, S & B has waived any objection it might have had to Gorman and Scoma being members of the Joint Committee. The Second Circuit has ruled that:

> [A party] cannot remain silent, raising no objection during the course of the arbitration proceeding, and when an award adverse to him has been handed down complain of a situation of which he had knowledge from the first.
>
> "Where a party has knowledge of facts possibly indicating bias or partiality on the part of an arbitrator he cannot remain silent and later object to the award of the arbitrators on that ground. His silence constitutes a waiver of the objection."

*Cook Industries, Inc. v. C. Itoh & Co. (America) Inc.,* 449 F.2d 106, 107–08 (2d Cir.1971) (quoting *San Carlo Opera Co. v. Conley,* 72 F.Supp. 825, 833 (S.D.N.Y. 1946), *aff'd,* 163 F.2d 310 (2d Cir.1947)) (citations omitted).

---

2. The instances in which vacating an arbitrator's award is justified are as follows:

    (a) Where the award was procured by corruption, fraud, or undue means.

    (b) Where there was evident partiality or corruption in the arbitrators, or either of them.

    (c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

    (d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

3. "At no time prior to the time the Joint Committee rendered its 1984 Decision, did either Respondent or its attorneys object to the partic-ipation of Shirley Scoma or Jack Gorman in the hearing of or decision on the grievance against Respondent." Affidavit of Frank J. Casino, ¶ 20. In response to petitioner's evidentiary support of its motion for summary judgment, it is incumbent on respondent to come forward with "suitable opposing affidavits." *Adickes v. S.H. Kress & Co.,* 398 U.S. at 157, 90 S.Ct. at 1608. Respondent has not done so. Rather, in response to petitioner's motion respondent has only submitted its Local Rule 3(g) Statement. Thus, although S & B states in paragraph 44 of its 3(g) Statement that it "objects to petitioner's assertion that at no time prior to the time the Joint Committee rendered its 1984 decision that either respondent or its attorneys objected to the participation of Scoma or Jack Gorman in the hearing of or decision on the grievance against respondent," this is simply insufficient to rebut petitioner's evidentiary support of its claim that S & B waived any objection to Scoma or Gorman.

S & B certainly had knowledge of the fact that members of the Joint Committee may be competitors of S & B. Paragraph 40(d) of the Agreement provides that "[t]he Joint Committee[] ... shall consist of an equal number of members appointed respectively by the Union and the Association...." Clearly most, if not all, of the members of the Association will logically be competitors of S & B. In an analogous case involving a New York Stock Exchange member which, by becoming a member, had agreed to arbitration of disputes in accordance with the Exchange Constitution and Rules, the Second Circuit stated in relevant part:

> The selection of the arbitration panels was known to [Garfield, a small firm], and it most certainly knew that any arbitrators, by their very connection with the Exchange, would, in the ordinary course of business, have dealings with specialists, and that Exchange arbitrators would usually have more substantial contacts with large member firms than with small member firms ... [I]n the present case Garfield agreed to arbitration before a panel of arbitrators who almost necessarily would have had dealings in the ordinary course of Exchange business with any potential opposing party who is also a member of the Exchange.

*Garfield & Co. v. Wiest,* 432 F.2d 849, 853–54 (2d Cir.1970). Accordingly, as S & B was aware of any potential bias on the part of Gorman prior to the proceedings before the Joint Committee but failed to object to Gorman being a member of the panel until after it rendered its decision, S & B is deemed to have waived this objection.

Similarly, it is apparent from the Gartner Affidavit that S & B's attorneys had had extensive contact with Shirlee Scoma prior to the arbitration and thus were fully aware of any possible bias on the part of Scoma. Again, having failed to raise any objection to Scoma until after the final award of the Joint Committee was made, S & B has waived its objection to Scoma.

S & B also claims that the Joint Committee's award went beyond the four corners of the Agreement and thus the Joint Committee exceeded its powers. I disagree. I find that the Joint Committee has merely interpreted the Agreement and determined that S & B has violated section 3(a). The Joint Committee acted within its power in ordering a cessation of this violation. Moreover, even if I disagreed with the Joint Committee's decision, this would not be grounds for vacating the award. *See United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960). ("[T]he courts have no business overruling [the arbitrator] because their interpretation of the contract is different from his.").

Finally, any claim that the Joint Committee's 1984 ruling represents an attempt to circumvent the NLRB ruling on representation is without merit. The Joint Committee's ruling only involved the matter of work assignments, not a question of representation.[4]

In sum, petitioner's motion for summary judgment is granted and the Joint Committee's award is confirmed.

SO ORDERED.

---

**4.** It should be noted that the jurisdiction of the National Labor Relations Board does not preempt this court's jurisdiction to confirm the award of the Joint Committee when a breach of a collective bargaining agreement under section 301 of the Labor Management Relations Act is the basis of the litigation. *See William E. Arnold Co. v. Carpenters District Council,* 417 U.S. 12, 16, 94 S.Ct. 2069, 2072, 40 L.Ed.2d 620 (1974); *Motor Coach Employees v. Lockridge,* 403 U.S. 274, 297–98, 91 S.Ct. 1909, 1923–24, 29 L.Ed.2d 473 (1971); *Smith v. Evening News Association,* 371 U.S. 195, 197, 83 S.Ct. 267, 268–69, 9 L.Ed.2d 246 (1962).