In the Matter of the Arbitration Between
LOCAL ONE AMALGAMATED LI-
THOGRAPHERS OF AMERICA affil-
iated with International Typographical
Union AFL–CIO, Petitioner-Appellee,

v.

STEARNS & BEALE, INC.,
Respondent-Appellant.

No. 1355, Docket 86–7072.

United States Court of Appeals,
Second Circuit.

Argued May 21, 1986.

Decided Feb. 23, 1987.

Michael F. O'Toole, New York City (Robinson, Silverman, Pearce, Aronsohn & Berman) for petitioner-appellee.

William G. O'Donnell, New York City (O'Donnell, Fox, Gartner & Sobolewski, P.C.) for respondent-appellant.

Before OAKES, MESKILL and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

This appeal presents the question of what is required to bind a non-signatory company to a union contract signed by another company. In an arbitration proceeding between Stearns & Beale, Inc. ("S & B") and Local One, Amalgamated Lithographers of America ("Local One")[1] the arbitrator decided that a non-signatory company which shared a common parent corporation with S & B, AAA International Printing Company ("AAA"), was bound by the S & B contract because the two companies were a "single employer." The arbitrator accordingly directed (in effect) that neither S & B nor AAA assign any lithographic production work to nonunion AAA employees. Local One then brought this action against S & B in the Southern District of New York to confirm the arbitration award; upon motion of Local One, summary judgment was granted and the award confirmed, 632 F.Supp. 167 (1985). We reverse and remand.

## BACKGROUND[2]

Originally S & B and AAA were separate established companies. After a falling out between the two founders of AAA, Ronald Toler and John Racanelli, Toler bought out Racanelli's interest in the firm. Toler then sought out another company with which to associate.

At the same time, S & B was suffering business reversals, and its president and sole stockholder, Milton Kahn, was therefore receptive to Toler's overtures.

In 1981, S & B and AAA became wholly owned subsidiaries of a single parent holding company, Toler-Kahn, Inc. Toler and Kahn each received 50 percent of the Toler-Kahn stock; Toler-Kahn in turn owned S & B and AAA. At that time, AAA moved to the same location as S & B, at 150 Varick Street in New York, New York.

Between April 1981 and February 1982, AAA and S & B shared work space on the fifth floor at 150 Varick Street. In February 1982, S & B sublet work space from an adjacent tenant and installed a wall between its space and the new space, into which AAA moved. Several common managerial offices are located between S & B and AAA, however, with a common telephone number for the two companies, and one AAA employee operates equipment in the S & B area because the machine's operation requires a water supply, which is

---

1. S & B is a member of Metropolitan Lithographers Association ("MLA"), an employer's collective bargaining association. Local One represents the employees of S & B under a contract negotiated by the MLA and Local One.

2. The background presented here is drawn from findings made in two arbitrators' decisions and a related N.L.R.B. unit clarification proceeding, hereinafter described, and from uncontradicted affidavits.

located near the men's bathroom within the S & B area.

S & B produces high quality color processed lithographic work such as glossy advertisements, catalogues and brochures. S & B has eight lithographic employees, who are employed in the job categories of pressmen, operators, and tenders. S & B's preparatory work is done by outside companies. Preparatory work consists of photographically separating the original colors into the four primary colors, then platemaking. S & B then uses the plates for printing. In the printing process, the four primary colors are blended to reconstruct the colors of the original so that the finished product looks like a photograph. Making the press ready by blending the colors and producing the finished print is a long, involved process during which the customer generally checks the proofs and approves the final print. The S & B presses produce glossy prints of up to forty inches.

AAA is a "letter shop," which is a high output, low quality printing operation. AAA's lithographic employees include three pressmen, two multi-lith operators, and one lithographic preparation employee. While the AAA presses can produce four color work, this work is done on uncoated stock and the colors of the output are not blended to appear like a photograph, but rather appear as blocks of colors. AAA does reproduction work on flat sheet or roll-fed paper. Its presses can produce output of up to seventeen inches. The output of AAA takes significantly less time to make ready and produce than the S & B output.

The companies in operation have maintained their separate identities. For example, while S & B and AAA share some common customers, the work performed by AAA and S & B for these customers differs. Thus, one customer may have S & B produce a glossy fashion design handbook and AAA produce a mass mailing of a black and white letter.

Because of the differences in the operations of the companies, the skills and conditions of employment of the two groups'

employees varies substantially. A four year apprenticeship is required to learn to operate the S & B presses. S & B employs "tenders" who assist the pressmen and learn the operations from the pressmen. While the apprenticeship is four years, it takes many more years for the pressman to perfect his craft. S & B employees work only on the S & B presses and do not perform any other work, like collating or binding.

The S & B employees work 35 hours straight time per week. Their hours of work are from 8:30 a.m. to 3:30 p.m., punched on the S & B time clock. The wage for S & B pressmen ranges from $14 to over $17 per hour depending upon the size and type of press. Wages of tenders are between $8 and $9 per hour. The S & B employees are covered by the union's benefit plan, which includes pension, welfare and unemployment funds.

The amount of time necessary to learn to use the production equipment in AAA varies by the piece of equipment, ranging from one week to several months (for the multi-lith equipment). The AAA employees occasionally shift around among the various positions within the AAA operation, which includes among other things collating and binding.

The AAA employees work 40 straight time hours per week. Their hours of work are from 8:30 a.m. to 5:00 p.m., punched on the AAA time clock. The AAA employees are covered by a profit-sharing retirement plan rather than a pension plan. The wage ranges of AAA employees appear to be substantially less than those of the S & B employees.

AAA employees have never performed work for S & B, and conversely S & B employees have never performed work for AAA. On one occasion when there was no work for the S & B employees, the eight employees worked on the maintenance of their presses and played cards rather than moving into the AAA side to perform work for AAA. No employees have been transferred from S & B to AAA nor has anyone transferred from AAA to S & B.

The foreman for S & B has never assigned work to, or in any other way supervised, AAA employees, nor has the AAA foreman assigned work to, or supervised, S & B employees. When an opening arose at S & B, the new employee was hired through Local One.

With the exception of the AAA employee who worked on the equipment located in S & B's work space, AAA employees only entered S & B's work area to use the men's bathroom located in a corner of S & B or to pick up the output of the AAA employee. S & B employees generally did not enter the AAA work space.

When S & B's output required binding or collating, it sometimes was contracted out to AAA and sometimes to outside companies. When it was given to AAA, S & B's foreman would take the work to the office located between the two sides or would notify the office that it was ready to be bound or collated. An office employee would then notify AAA's foreman who would have a laborer pick up the work for its completion.

In April 1983, Local One initiated arbitration to declare four lithographic production employees of AAA covered by the union contract between S & B and Local One.[3] The grievance stated that S & B had four employees working on its premises to whom the collective bargaining agreement was not being applied. The arbitrator, a joint committee of employer and labor representatives, decided in favor of the union, holding that the four AAA employees

should be included in the collective bargaining unit of S & B employees.

S & B then petitioned the N.L.R.B. for clarification of the collective bargaining unit. The N.L.R.B., through its regional director, ruled that the four AAA employees were not an accretion to the S & B bargaining unit. Specifically, the opinion stated that: "While AAA and S & B share common ownership and management sufficient to warrant a finding that AAA and S & B constitute a single employer, there are many other factors weighing in favor of a finding that the four AAA employees sought by the Union are not an accretion to the unit represented by the Union at S & B, and that AAA operates separately from S & B."[4]

Rather than appeal this decision or follow the N.L.R.B.'s advice to hold an election by the AAA workers, the union asked the joint arbitration committee to amend its award. The committee then ruled that S & B and AAA constituted a single employer, and although the committee could not "require the Employer to apply the collective bargaining unit" to the four AAA employees in view of the N.L.R.B. ruling, "the Employer" was prohibited from "assigning lithographic production work to employees who are not covered by the collective bargaining agreement." The committee further stated that "the Employer" could conform to the order by reassigning the AAA employees to the collective bargaining unit,

3. Originally the union sought to have all the AAA employees included in Local One, but later amended its complaint to include only the four AAA lithographic production employees.

4. The N.L.R.B.'s reasons for finding that the AAA employees were not an accretion to the S & B collective bargaining unit were: the lack of interchange between the employees of AAA and S & B, lack of integration of operations of AAA and S & B, lack of bargaining history for the AAA employees the Union seeks to add to its existing unit of S & B employees, and the fact that the employees of AAA and S & B have separate supervision, possess different skills, and perform different work. It is also clear that the day-to-day operations of AAA and S & B are separately controlled. In addition, the employees of

AAA and S & B generally work in different areas, receive different benefits and wages and have different hours of work. While the AAA platemaking employee works on the S & B side, it is evident that he is supervised by the AAA foreman, he prepares plates for the AAA processes, and any contact he may have with the S & B employees is primarily social. Further, while AAA and S & B are both engaged in providing lithographic services to commercial customers, the record reveals that the type of services provided by each are quite different. Those provided by S & B are of a finer quality than those provided by AAA, and accordingly require more refined processes and highly skilled employees.
*Stearns & Beale*, No. 2–UC–305, slip op. at 9–10 (NLRB April 9, 1984).

"which it was required to do under the contract."[5]

S & B petitioned the N.L.R.B. regional director, alleging that the union had violated the National Labor Relations Act ("NLRA")[6] through the award. The director refused to issue a complaint. The N.L.R.B. general counsel, on January 30, 1985, affirmed the director because the amended committee award did not directly conflict with the earlier N.L.R.B. ruling and the N.L.R.B. has a policy of non-interference in arbitration. The general counsel also stated that if the award later undermined the earlier N.L.R.B. ruling, charges at that time might be warranted.

In January 1985, prior to the general counsel's action, Local One brought suit in the Southern District of New York to confirm the amended arbitration award of the joint committee. The district court confirmed the award on Local One's motion for summary judgment.

On April 29, 1986, the regional director again refused to issue a complaint. He stated that the evidence established neither that the union violated sections 8(b)(1)(A), (2) and (3) by seeking to enforce the arbitration award, nor that the union was seeking to represent the AAA employees.

### DISCUSSION

■ As an initial matter, appellee challenges this court's jurisdiction. The only case cited for the proposition that we lack jurisdiction over an appeal from a district court's order of enforcement is *Myers v.* *Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938). That case held that a district court may not enjoin an N.L.R.B. proceeding, *id.* at 47, 58 S.Ct. at 461–62, and does not support appellee's position. If, on the other hand, appellee means to argue that this court lacks jurisdiction over this appeal because of the prior N.L.R.B. proceedings, it misconstrues the nature of the action it has brought in the federal court. This action is to enforce the award of the arbitrator by final order of the district court, from which appeal properly lies under 28 U.S.C. § 1291 (1982). *See Goodall-Sanford, Inc. v. United Textile Workers of America,* 353 U.S. 550, 551–52, 77 S.Ct. 920, 921, 1 L.Ed.2d 1031 (1957) (district court order under § 301(a) directing arbitration is a final order appealable under 28 U.S.C. § 1291). This action does not question the result or findings of the N.L.R.B. unit clarification proceeding, and, as discussed immediately *infra,* is not affected by the N.L.R.B. regional director's subsequent refusals to enforce the N.L.R.B. decree.

Local One also argues that the regional director's refusal to bring a charge eliminates the court's jurisdiction over the issue. An N.L.R.B. regional director's refusal to bring a charge of unfair labor practices does not rob the federal courts of jurisdiction over the contract in question, and has no collateral effects. *See Peltzman v. Central Gulf Lines, Inc.,* 497 F.2d 332, 334–35 (2d Cir.1974), *cert. denied,* 423 U.S. 1074, 96 S.Ct. 857, 47 L.Ed.2d 83 (1976); *International Union of Electrical, Radio*

---

**5.** The effect of this ruling is somewhat murky. S & B, but not AAA, was a party to the arbitration, and "the Employer" is not a defined term in the committee ruling. On the other hand, the committee found S & B and AAA to be a "single employer" in its ruling. The fact that the case has proceeded this far would indicate that the parties deem the arbitration award, as confirmed below, to bar AAA (and S & B) from assigning lithographic production work to AAA's four lithographic production employees. Moreover, the district court has held S & B in contempt during the pendency of this appeal because AAA employees continued to perform lithographic work for AAA after the arbitration award was confirmed.

It would therefore appear that the dissent's view that the language of the joint committee's amended award calling for the "reassignment" of AAA's lithographic employees to the "collective bargaining unit" has been treated as surplusage, *i.e.,* that the joint committee's amended award should be read merely as prohibiting S & B from assigning work to AAA employees— which it is not doing according to the N.L.R.B., whose finding is not contradicted by the amended joint committee award—misconstrues the actual impact of the amended joint committee award as it has been construed and applied by Local One and the court below.

**6.** Section references hereinafter unaccompanied by citation of a title of the U.S.Code are to sections of the NLRA.

*and Machine Workers v. General Electric Co.*, 407 F.2d 253, 264 (2d Cir.1968), *cert. denied*, 395 U.S. 904, 89 S.Ct. 1742, 23 L.Ed.2d 217 (1969); *McConnell v. Chauffeurs, Teamsters and Helpers Local 445*, 606 F.Supp. 460, 462 (S.D.N.Y.1985); *see also Edna H. Pagel, Inc. v. Teamsters Local Union 595*, 667 F.2d 1275, 1279–80 & nn. 10–12 (9th Cir.1982).

S & B also makes several non-meritorious arguments which we now address, before turning to what we deem to be the deciding issue of law. S & B first argues that the joint committee exceeded its authority because the remedy went beyond the four corners of the collective bargaining agreement.

The district court is authorized to vacate an arbitration award if the arbitrator exceeded its powers. 9 U.S.C. § 10(d) (1982). The joint committee's powers derive from section 40(a) of the contract, which provides: "In the event of any dispute with reference to the interpretation, application or breach of any terms contained in this contract," the matter shall be arbitrated. Section 3(a) of the collective bargaining agreement, the section allegedly violated, provides:

> The Employers recognize the Union as the exclusive collective bargaining agent for all of the lithographic ... production employees in the plants or departments of the employers within the Union's territorial jurisdiction.

Appellant argues that the arbitrator fashioned a work assignment remedy, but since the contract grants only representation rights and the award goes beyond representation, it is void and unenforceable.

█ Where the parties have provided for interpretation of their collective bargaining agreement by arbitration, the courts will defer to the arbitrator's interpretation. *See United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). Courts will vacate an award only if it is not based on a construction of the contract. Mere disagreement with the construction of the contract is not enough

to disturb the award. *See id.* at 599, 80 S.Ct. at 1362.

█ S & B is arguing with the interpretation of the contract, not the basis of the committee's decision or its power to make the decision. The committee clearly interpreted section 3(a) of the collective bargaining agreement, which it had the power to interpret under section 40(a) thereof. While S & B argues that the arbitrator's interpretation of the contract was incorrect, the error cannot be remedied by the courts. The court is limited to deciding whether Local One

> is making a claim which on its face is governed by the contract.... The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim.

*United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 568, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960) (footnote omitted); *see also United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960) ("[T]he judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made.... Doubts should be resolved in favor of coverage.").

█ Appellant also argues that the amended award conflicts with the prior N.L.R.B. ruling on the appropriate collective bargaining unit. N.L.R.B. rulings take precedence over arbitrator's rulings. *Carey v. Westinghouse Electric Corp.*, 375 U.S. 261, 272, 84 S.Ct. 401, 409, 11 L.Ed.2d 320 (1964); *see Vidtronics Company*, 269 N.L.R.B. 133, 141 (1984).

█ The N.L.R.B. found that the AAA employees and the S & B employees were separate bargaining units. That finding " 'does not *per se* preclude the employer from adding to, or subtracting from, the employees' work assignments.' " *Carey*,

375 U.S. at 269, 84 S.Ct. at 408 (quoting *Plumbing Contractors Association,* 93 N.L.R.B. 1081, 1087 (1951)). It does, however, indicate that the arbitrator's amended award, while it might direct employer action legitimately falling within the category of work assignments, cannot grant relief that requires or presupposes the AAA and S & B employees to be within the same bargaining unit, a point that becomes important later.

■■■ Appellant finally contends that the award is contrary to sections 8(b)(1)(A),[7] (2),[8] and (3).[9] While S & B does not seem to have squarely presented the issue of legality to the lower court, this court, in the interests of justice, can consider the claim. *See Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *LaBruna v. U.S. Marshall,* 665 F.2d 439, 442 (2d Cir.1981); *see also Davis v. Musler,* 713 F.2d 907, 917 (2d Cir.1983) (Van Graafeiland, J., concurring) (collecting cases). We feel that the standard is met where, as here, the enforcement of the arbitration award could affect the rights of the nonunion employees, as well as AAA.

■ When an arbitrator's award is against a public policy which is well defined and dominant, the award is unenforceable. *See W.R. Grace & Co. v. Local Union 759, International Union of the United Rubber, Cork, Linoleum & Plastic Workers of America,* 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983). The NLRA represents such a public policy. *See, e.g., Perma-Line Corporation of America v. Sign Pictorial and Display Union, Local 230,* 639 F.2d 890, 894–95 (2d Cir.1981)

(clause of collective bargaining agreement in violation of NLRA and arbitrator's award based thereon would be vacated); *General Warehousemen and Helpers Local 767 v. Standard Brands, Inc.,* 579 F.2d 1282, 1293 (5th Cir.1978) (in banc) (violation of § 9(a) rights), *cert. dismissed,* 441 U.S. 957, 99 S.Ct. 2420, 60 L.Ed.2d 1075 and 443 U.S. 913, 99 S.Ct. 3103, 61 L.Ed.2d 877 (1979); *Glendale Manufacturing Co. v. Local No. 520, Int'l Ladies' Garment Workers' Union,* 283 F.2d 936 (4th Cir. 1960) (arbitration award that would cause employer to violate employees' § 7 rights was not enforceable), *cert. denied,* 366 U.S. 950, 81 S.Ct. 1902, 6 L.Ed.2d 1243 (1961); *cf. Sperry Systems Management Division v. N.L.R.B.,* 492 F.2d 63, 70 (2d Cir.) (union's attempt to enforce arbitrator's award which violated § 7 rights of employees was itself a failure to bargain collectively), *cert. denied,* 419 U.S. 831, 95 S.Ct. 55, 42 L.Ed.2d 57 (1974).

We start with the general proposition that "an employer commits the unfair labor practices of interfering with employees' § 7 rights and supporting a union in violation of § 8(a)(1) and (a)(2) when it imposes on employees of one unit the contract and bargaining agent of another unit." *Sperry Systems Management Division,* 492 F.2d at 69.

■ Courts and the N.L.R.B. have held that to bind a non-signatory company to a collective bargaining agreement, both single employer and single bargaining unit status must be found. *See South Prairie Construction Co. v. Local No. 627, International Union of Operating Engineers,*

---

**7.** Section 8(b)(1)(A) makes it an unfair labor practice for a labor union to restrain or coerce employees in the exercise of their section 7 rights. *See* 29 U.S.C. § 158(b)(1)(A) (1982). Section 7 of the NLRA provides in relevant part:

Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining ... *and shall also have the right to refrain from any or all of such activities....*

29 U.S.C. § 157 (1982) (emphasis added).

**8.** Under section 8(b)(2), if a union causes or attempts to cause an employer to discriminate against an employee by interfering with a term or condition of employment in order to encourage membership in a union, the union has committed an unfair labor practice. *See* 29 U.S.C. § 158(b)(2) (1982). Work allocation to a bargaining unit is a term and condition of employment. *Road Sprinkler Fitters Local Union No. 669 v. N.L.R.B.,* 676 F.2d 826, 831 (D.C.Cir.1982).

**9.** A section 8(b)(3) violation occurs when a union refuses to bargain collectively with the employer. *See* 29 U.S.C. § 158(b)(3) (1982).

425 U.S. 800, 805, 96 S.Ct. 1842, 1844, 48 L.Ed.2d 382 (1976) (per curiam); *Carpenters' Local Union No. 1478 v. Stevens*, 743 F.2d 1271 (9th Cir.1984), *cert. denied*, 471 U.S. 1015, 105 S.Ct. 2018, 85 L.Ed.2d 300 (1985); *Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc.*, 690 F.2d 489, 505 (5th Cir.1982), *cert. denied*, 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983); *Frank N. Smith Associates, Inc.*, 194 N.L.R.B. 212, 218 (1971); *see Gerace Construction, Inc.*, 193 N.L.R.B. 645, 646 (1971); *Central New Mexico Chapter*, 152 N.L.R.B. 1604, 1608 (1965).[10] The single bargaining unit requirement protects the section 7 rights of the nonunion employees, since binding the employer necessarily affects its employees' rights. *Pratt-Farnsworth, Inc.*, 690 F.2d at 507. The Board therefore conducts a separate bargaining unit inquiry, which is guided by the principle of protecting the employees' section 7 rights, *see* 29 U.S.C. § 159(b) (1982); 18C T. Kheel, *Business Organizations: Labor Law* § 14.01[1], at 14–2 (1982); *id.* § 14.-01[2], at 14–9, to assure that the asserted contractual rights of the union are consistent with the employees' statutory rights, *cf. Sperry Systems Management Division*, 492 F.2d at 69 (imposing contract and bargaining agent of one unit on a different unit violates §§ 8(a)(1) and (2)); *Cal-Fin*, 217 N.L.R.B. 871, 874 (1975) (when nonmajority union and employer enter into a collective bargaining agreement, employer violates §§ 8(a)(1) and (2) and union violates § 8(b)(1)(A)). If, therefore, the collective bargaining agreement in this case requires that the AAA employees be covered by the agreement, under these precedents it is illegal under section 7 of the NLRA.

The theory of Local One, on the other hand, is that a finding of single employer status suffices to force the non-union company, AAA, to recognize the contract. AAA having been bound to the contract, the case becomes merely a work assign-

ment problem. However, work assignment cases are distinguishable because in those cases one company has in fact signed the contracts at issue, and the dispute involves only that company.[11] *See e.g., Carey v. Westinghouse Electric Corp.*, 375 U.S. 261, 262, 84 S.Ct. 401, 404, 11 L.Ed.2d 320 (1964); *N.L.R.B. v. Radio and Television Broadcast Engineers Union, Local 1212*, 364 U.S. 573, 574, 81 S.Ct. 330, 331–32, 5 L.Ed.2d 302 (1961); *N.L.R.B. v. New York Lithographers and Photoengravers' Union No. 1P*, 600 F.2d 336, 338 (2d Cir.1979); *In re Local 26, International Fur and Leather Workers Union of the United States and Canada*, 90 N.L.R.B. 1379, 1380 (1950). Here a signature by a second company (AAA) is imputed. As the Fifth Circuit noted in *Pratt-Farnsworth*, "[o]nly where the employees do constitute an appropriate unit will the non-signatory firm be bound to the collective bargaining agreement entered into between the signatory firm and the union." 690 F.2d at 508.

In *Pratt-Farnsworth*, the plaintiffs, two unions, sued two construction companies it claimed were operated as a "double-breasted" operation. A double-breasted operation is one in which one subcontractor operates a union company that bids on union contracts and a nonunion company that bids on nonunion contracts. *Id.* at 497 & n. 1. The unions sought, *inter alia*, to apply their collective bargaining agreement with the union company to the nonunion company. The Fifth Circuit explained that:

A finding of single employer status does not by itself mean that all the subentities comprising the single employer will be held bound by a contract signed only by one. Instead, having found that two employers constitute a single employer for purposes of the NLRA, the Board then goes on to make a further determination whether the employees of both constitute an appropriate bargaining unit.... [E]ven if two firms are a single employ-

---

**10.** It should be noted in deference to the court below that the single employer/single bargaining unit requirement was not brought to the attention of that court, nor of this court. We consider it however, in the interests of justice, as previously discussed.

**11.** The same standards govern whether the work assignment dispute is between two unions or between a union and nonunion employees. *See Communications Workers of America, AFL–CIO*, 118 N.L.R.B. 1104, 1107 (1957).

er, a union contract signed by one would not bind both unless the employees of both constituted a single bargaining unit. *Id.* at 505. The court noted that this dual requirement protects the section 7 rights of the nonunion employees. *Id.* at 507.

The Fifth Circuit is not alone in its position. *See, e.g., South Prairie Construction Co.,* 425 U.S. at 802–04, 96 S.Ct. at 1843–44 (affirming D.C. Circuit's reversal of N.L.R.B. decision on single employer status, but vacating the circuit court's findings on single bargaining unit as an invasion of the N.L.R.B.'s authority); *N.L.R.B. v. Al Bryant, Inc.,* 711 F.2d 543, 550 (3d Cir.1983) (requiring both single employer and single bargaining unit to bind the nonunion company to the union contract), *cert. denied,* 464 U.S. 1039, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984); *Road Sprinkler Fitters Local Union No. 669 v. N.L.R.B.,* 676 F.2d 826, 830 (D.C.Cir.1982) (same); *N.L. R.B. v. Don Burgess Construction Corp.,* 596 F.2d 378, 386 (9th Cir.) (same), *cert. denied,* 444 U.S. 940, 100 S.Ct. 293, 62 L.Ed.2d 306 (1979). Similarly, we have previously enforced an order of the N.L.R.B. requiring four related companies to bargain with a single union because the companies were a single employer and their employees constituted a single bargaining unit. *See N.L.R.B. v. A.K. Allen Co.,* 252 F.2d 37, 38 (2d Cir.1958).

■ The N.L.R.B. here has found separate bargaining units. In the face of that finding, *Pratt-Farnsworth* would call for a determination that the joint committee had no contractual authority to hold AAA to the terms of the union agreement. Without a finding of both single employer and single collective bargaining unit, the joint committee exceeded its authority in purporting to affect the rights of the nonunion employees with respect to the nonunion employer.

The Third Circuit has implied that the application of the single employer/single bargaining unit doctrine might be limited to the construction industry. *See Al Bryant, Inc.,* 711 F.2d at 550. Other circuits however have applied the doctrine in nonconstruction cases, *see, e.g., Brother-*

*hood of Teamsters, Local No. 70 v. California Consolidators, Inc.,* 693 F.2d 81, 82–83 (9th Cir.1982) (per curiam) (trucking), *cert. denied,* 469 U.S. 887, 105 S.Ct. 263, 83 L.Ed.2d 199 (1984); *N.L.R.B. v. Royal Oak Tool & Machine Co.,* 320 F.2d 77, 79 (6th Cir.1963) (manufacturing), as has the N.L. R.B., *see, e.g., Western Union Corp.,* 224 N.L.R.B. 274, 274 (1976) (installation, maintenance and operation of equipment), *affirmed sub nom. United Telegraph Workers, AFL–CIO v. N.L.R.B.,* 571 F.2d 665 (D.C.Cir.), *cert. denied,* 439 U.S. 827, 99 S.Ct. 101, 58 L.Ed.2d 121 (1978); *General Envelope Co.,* 222 N.L.R.B. 10, 10 (1976) (commercial printing); *Dixie Belle Mills, Inc.,* 139 N.L.R.B. 629, 630 (1962) (manufacturing). Moreover, the policies underlying this doctrine apply with greater force in this case than in the usual double-breasted construction company case.

In the construction industry, there exist two markets, union and nonunion. Companies therefore need both union and nonunion subsidiaries to bid on every available project, despite the fact that the work is otherwise identical. *See Carpenters' Local Union No. 1478 v. Stevens,* 743 F.2d 1271, 1275 (9th Cir.1984), *cert. denied,* 471 U.S. 1015, 105 S.Ct. 2018, 85 L.Ed.2d 300 (1985). In this case, however, the work performed by AAA and S & B is substantially different. AAA performs low quality printing in mass quantities. S & B is a high quality printer. It may well be that low quality printing could not be done profitably on the terms of the Local One contract.

In any event, the single employer doctrine is the justification asserted by the joint committee for applying the Local One contract to AAA. As a matter of law, however, it is against public policy to bind a non-signatory company where the employees of both companies do not constitute a single collective bargaining unit. Accordingly, the committee award cannot stand on the basis of the single employer doctrine in the face of an unchallenged N.L.R.B. determination that the lithographic production employees of S & B and AAA do not constitute a single bargaining unit.

Prior cases in this circuit support our holding, and have consistently guarded against attempts by unions to gain representation of separate bargaining units through methods other than elections. In *Sperry Systems Management Division v. N.L.R.B.*, 492 F.2d 63 (2d Cir.), *cert. denied*, 419 U.S. 831, 95 S.Ct. 55, 42 L.Ed.2d 57 (1974), this court held that "covert attempts to subvert the Board's orders regarding the proper bargaining unit" were illegal. *Id.* at 68–69. In that case, a union representing New York employees sought to extend its jurisdiction to include California nonunion employees. An arbitrator ruled that the contract applied to all company plants, but that its extension to the California employees would violate their section 7 rights. He ordered that the terms of employment provisions be applied to the California workers, but not the representation clauses. *Id.* at 65. At the same time, the union lost a representation election at the California plant. The union then sought to enforce the arbitration award. The court held that the attempt to enforce the arbitration award was "a *sub rosa* attempt to gain ... *de facto* recognition as bargaining agent of the [California] employees," *id.* at 68, because the parties had agreed that the California employees were a separate bargaining unit, and the union's reason for insisting that the arbitration award be enforced, protecting the job security of its New York members, was not credible, *id.*

Similarly, in *Welch Scientific Company v. N.L.R.B.*, 340 F.2d 199 (2d Cir.1965), a company sought to apply an existing union contract to a new plant where the employees were not an accretion to the existing bargaining group and the new unit had chosen a different union representative. We held that the company had committed an unfair labor practice because it interfered with the employees' right to choose their own representative. *Id.* at 202–03.

Again, in *N.L.R.B. v. Masters-Lake Success, Inc.*, 287 F.2d 35 (2d Cir.1961) (per curiam), we enforced an N.L.R.B. order finding that an employer committed an unfair labor practice by applying an existing exclusive collective bargaining agreement to a new store's employees because they were a separate bargaining unit that should be allowed to make its own free choice of representative. *Id.* at 36.

Finally, looking past the plain language of the joint committee's decision, the argument could be made that the arbitration award and district court enforcement order could be affirmed on the basis of the alter ego doctrine. We would and do reject any such argument.

■ The alter ego doctrine is designed to defeat attempts to avoid a company's union obligations through a sham transaction or technical change in operations. *See Pratt-Farnsworth, Inc.*, 690 F.2d at 508. The key factors to be weighed in an alter ego analysis are "whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership." *Goodman Piping Products, Inc. v. N.L.R.B.*, 741 F.2d 10, 11 (2d Cir.1984) (per curiam); *see Crawford Door Sales Co.*, 226 N.L.R.B. 1144, 1144 (1976).

■ A number of facts require a holding that the arbitrator's award cannot stand as an alter ego finding. Primarily, such a basis would be in direct conflict with the findings of the N.L.R.B. on the unit clarification proceeding, see *supra* note 4, as well as its conclusion that the companies operate separately. Though the inquiries are separate, the N.L.R.B. findings are highly relevant to the alter ego question. *See United Telegraph Workers, AFL–CIO v. N.L.R.B.*, 571 F.2d 665, 668 (D.C.Cir.), *cert. denied*, 439 U.S. 827, 99 S.Ct. 101, 58 L.Ed.2d 121 (1978). We also note that the two companies functioned as ongoing business entities prior to their acquisition by Toler-Kahn, and that both continue in business, performing substantially the same work as before the acquisition. While this may not necessarily preclude the use of the alter ego doctrine, in this case it weighs significantly against an alter ego finding. *See Pratt-Farnsworth, Inc.*, 690 F.2d at 508 n. 8.

## CONCLUSION

The grant of summary judgment to plaintiff-appellee confirming the arbitration award is reversed, and the case is remanded for further proceedings consistent with this opinion.

OAKES, Circuit Judge (dissenting):

I respectfully dissent.

There is no question but that Local One, Amalgamated Lithographers of America ("Local One"), is the exclusive bargaining agent for the lithographic production employees of all members of the Metropolitan Lithographers Association (the "MLA"), a trade group of which the printing concern of Stearns & Beale, Inc. ("S & B"), is a member. The collective bargaining agreement (the "agreement") provided that any dispute arising under the agreement was to be submitted to a joint committee of Local One and the MLA (the "Joint Committee"). In April 1983, Local One filed a grievance, claiming that four employees of AAA International Printing Co. ("AAA") who were not members of Local One were working for S & B in violation of the agreement. AAA and S & B are both wholly-owned subsidiaries of the same holding company, located on the same floor of the same building. The Joint Committee ruled that S & B had to cover the AAA employees under the terms of the agreement. The Regional Director of the NLRB, however, in a unit clarification hearing, held that the AAA employees should not be considered an accretion to the S & B unit. Local One asked the Joint Committee to reconsider its original decision in light of the Regional Director's determination. The Joint Committee did so, ruled that the agreement had been violated, and ordered that the employer, S & B, "immediately cease assigning lithographic production work to employees who are not covered by the collective bargaining agreement."

If the Joint Committee's ruling stopped there, I would readily agree with Local One that we should affirm the district court's decision to confirm the Joint Committee's award. *Carey v. Westinghouse Electric Corp.*, 375 U.S. 261, 266, 84 S.Ct. 401, 406, 11 L.Ed.2d 320 (1964), held that arbitration of work assignment controversies furthers the policies of the NLRA, and the question of which employees constitute "employees engaged in the manufacture of lithographic work" under Paragraph 3(a) of the agreement seems a matter best entrusted to the arbitrators.

But the Joint Committee did not stop there. Rather it went on to say that "in conforming to this decision, the Employer need not lay off any employees" but "may merely take the step of reassigning those lithographic employees to the collective bargaining unit, which it was required to do under the contract." This seems at first glance, as Judge Mahoney's opinion indicates, to be a violation of the mandate against sub rosa attempts to gain de facto recognition as a bargaining agent set forth in *Sperry Systems Management Division v. NLRB*, 492 F.2d 63, 68–69 (2d Cir.), *cert. denied*, 419 U.S. 831, 95 S.Ct. 55, 42 L.Ed.2d 57 (1974). Were this all there were to the case, then I would be inclined to agree with the majority opinion that we should remand for purposes of having the district court address this issue directly.

I think, however, that the district court, the union, and, more importantly, the NLRB have in effect construed the Joint Committee decision as if it omitted the sentence reassigning AAA employees to the bargaining unit. This is the construction the district court adopts when it says that "[t]he Joint Committee's ruling only involved the matter of work assignments, not a question of representation." It is the construction the union adopts when in its brief it states that the Joint Committee did not find that S & B must apply the collective bargaining agreement to AAA employees but merely that S & B must cease assigning these employees lithographic work. And it is the NLRB's construction. When S & B presented its claim to the NLRB that the Joint Committee award represented an attempt to circumvent the NLRB ruling on representation and as such constituted an unfair labor practice, the claim was dismissed as being without merit. Appeal to the office of the general

counsel of the NLRB resulted in a holding that the Joint Committee's decision limited itself to work assignment issues. Finally, in a letter dated April 28, 1986, the NLRB Regional Director dismissed a charge brought by S & B and AAA against the union on the same basis, noting "that the Federal Court's order affirming the arbitration award specifically found that the Joint Committee's ruling involved a matter of work assignments, and did not decide a question of representation, and therefore there was no circumvention of the unit clarification decision."

Thus, as I see it, the union, the district court, and the NLRB have treated the reassignment language in the Joint Committee's decision as surplusage. I suggest we can do the same. So treated, the Joint Committee's decision operates only to prevent S & B from making a work assignment to the AAA lithographers, and as such it should not be overturned. I would agree, however, that were the union to seek to use the language in the Joint Committee's decision to require the employer to assign the lithographic employees to the S & B collective bargaining unit, then that could be held an unfair labor practice. This is what I think was meant by the Director of the NLRB Office of Appeals in her letter to counsel of January 30, 1985, stating in part that "[i]f action taken to implement the Joint Committee decision has the effect of undermining the Regional Director's representational findings in 2–UC–305, these issues can be raised in a subsequent charge." I would simply make it very clear that affirmance of the district court does not in any way suggest that the union could force the employer to permit it to represent the AAA employees or that it could insist upon representing them.

This would leave open the question whether if either AAA or S & B itself wanted to take advantage of the language that I have termed surplusage and sought to require the four AAA employees to become members of Local One in order to keep their jobs, the employer might be subjecting itself to an unfair labor practice charge vis a vis the employees involved. But this is a question we need not face at the moment, in the absence of any indication that either employer will take this course.

I conclude that, like the union, the district court, and the NLRB, we can treat the inappropriate language of the Joint Committee as to reassignment of the four employees to the S & B collective bargaining unit as neither mandatory nor binding, and hence for all practical purposes as surplusage. Doing so we could, and should, affirm.